# CHARLESTON.

## GRANT v. BALTIMORE & OHIO RAILROAD CO.

Submitted February 16, 1909.   Decided November 9, 1909.

1. STATUTES—*Implied Repeal by Act Relating to Same Subject.*
    A later statute, covering the whole subject matter of an earlier one, not purporting to amend it, and plainly showing it was intended to be a substitute for the earlier act, works a repeal of such earlier act by implication, even though the two are not repugnant in the usual sense of the term. (p. 177).

2. SAME.
    In such case, inconsistent intent is disclosed by the two acts; considered as entireties, but there may be no repugnancy between words, phrases or clauses, considered as such. (p. 179).

3. SAME—*Implied Repeal—New Penalty for old Offense.*
    A statute, prescribing a new penalty for an old offense, does not destroy the latter nor create a new offense, but, in providing a new penalty, it impliedly repeals the old penalty, and, to that extent, modifies the antecedent law of the subject matter. (p. 179).

4. SAME—*Implied Repeal—Penalty for old Offense Payable to Different Person.*
    A later statute, imposing a fine in favor of the state for violation of provisions of an earlier one, which imposed a penal pecuniary liability in favor of the aggrieved party, but none in favor of the state, for the same unlawful act, and disclosing, by its title and provisions, intent to deal fully, comprehensively and exclusively with the subject of punishment for such offense, and not merely by way of amendment, repeals the penal clause of such earlier statute by implication.   (p. 180).

5. SAME—*Revival, Revision, or Re-enactment.*
    As none of the several editions of the code of this state, other than that of 1868, constitute revisions or re-enactments of the statutes, publication in them of a statute, repealed by implication or otherwise, does not revive it, nor give it force and effect in any way. (p. 183).

Error to Circuit Court, Wetzel County.

Action by Arthur Grant against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error

*Reversed and Judgment for Defendant.*

66 W. Va.

*J. W. Davis* and *Thos. P. Jacobs,* for plaintiff in error.

*John Ross, Jr.,* and *J. Edward Law,* for defendant in error.

POFFENBARGER, JUDGE:

The complaint of the Baltimore & Ohio Railroad Company, on a writ of error to a judgment against it in favor of Arthur Grant, rendered by the circuit court of Wetzel county, in an action of debt, for the recovery of three $500.00 statutory penalties, for passenger fares, exacted or taken in excess of the rate prescribed by law, raises, among others, the following questions, as the case is disclosed by the briefs filed: (1) Whether a certain portion of chapter 54 of the Code, namely, section 82cV, constituting section 2475 of the Code of 1906, is repealed by chapter 41 of the Acts of 1907; (2) if so, whether the right of action given by said section 82cV was destroyed by the repeal of said section, the[...] no saving clause in the Act of 1907; and (3) w[...] ,tion 9 of chapter 13 of the Code, section 285 of th[...] 1906, is a general saving clause, applicable to civil a[...] rights of recovery, accrued under penal statutes befor[...] chereof.

The sections of chapte[...] [c]onstituting the subject matter of the Act of 1907, first [appe]ared in chapter 227 of the Acts of 1872-73. The Act of 1907 is a general independent act, not one amending the then existing law by sections, nor referring, in express terms, to the Act of 1872-73. It is entitled "An act relating to and regulating passenger rates upon railroads in the state of West Virginia, and prescribing penalties for the violation thereof." It prescribes the uniform rate of two cents a mile on all railroads fifty miles long and over, operating in the state. It then provides as follows: "Any railroad company which shall charge, demand or receive any greater compensation for the transportation of any passenger than is authorized by this act, shall be fined for each offense not less than fifty dollars nor more than five hundred dollars." The repealing clause reads as follows: "All acts or parts of acts inconsistent herewith are hereby repealed." The old law classified railroads according to their gross annual earnings per mile, making four classes, and prescribed the rates which might be charged by railroads of each class. Section 82cV contained this provision:

"Any railroad corporation which shall charge, demand or receive any greater compensation for the transportation of any passenger than is authorized by this act, shall be liable to the party aggrieved in the sum of five hundred dollars, and the same may be recovered, together with all costs of suit and a reasonable attorney's fee, to be taxed by the court in an action of debt in any court having competent jurisdiction."

Of course, the provisions of the Act of 1872-73, fixing rates, were repealed, by the Act of 1907, for the rates prescribed in the two acts are entirely different and inconsistent. *Pinnacle Coal Co.* v. *N. & W. Ry. Co.*, 44 W. Va. 574. But the question raised here is, whether the penal provision of that act has been repealed by implication. Observance of another statute, chapter 67 of the Acts of 1879, constituting section 85cXV of chapter 54 of the Code, suggests that the penal section of the Acts of 1872-73 was repealed by it at a date much earlier than that mentioned in the briefs filed. If so, it is unnecessary to consider any of the arguments relating to the effect of section 9 of chapter 13 of the Code, for the repeal of that provision took place long before the occurrence of the matters complained of in the declaration. As, in this view of the case, no right of action ever accrued to the plaintiff, a saving clause would avail him nothing. The Act of 1879 is entitled "An act prescribing penalties for charging, demanding or receiving unlawful charges for the transportation of passengers and freight upon railroads;" and it makes every such act a misdemeanor, inflicting a penalty of not less than one hundred nor more than five hundred dollars. Prior to its passage, charging, demanding or receiving compensation in excess of the rates fixed by law did not impose liability to the state in any sum of money. The sole money penalty inflicted was in favor of the injured party, the Act of 1872-73 giving to the passenger and to the injured shipper separate rights of action for penalties. That these penalties were not intended, primarily, for compensation, is entirely clear, because they were disproportionate to the injury in almost every case. Compensation for loss of money, according to the standard recognized by courts everywhere, is measured by the money unlawfully taken and the interest thereon. The sums so authorized to be recovered were, in fact and in law, penalties, and were intended as punishment, to be inflicted at

the option or instance of the party aggrieved, as a means of compelling obedience to the law prescribing rates, the legislature deeming this an ample provision for that purpose. The Act of 1879 deals with the same subject. Tested by its title, as well · as its provisions, it is full, comprehensive and complete, and must be deemed to have been intended by the legislature as a substitute for all other statutes covering that precise subject. There is nothing in the act which imports an intention to supplement the provisions of the Act of 1872-73. There is no reference to it, either in the title or elsewhere. It is an independent general provision, covering the subject fully and completely. Intent to give it such effect is indicated by the last clause, saying "Nothing in this act shall be so construed as in any manner to interfere with or protect such company or corporation against any proceedings for a forfeiture of its charter or chartered rights." This provision saves the benefit of section 15 of the Act of 1872-73, providing for forfeiture of the charter of any railroad corporation for wilful violation of the provisions of that act, which related almost exclusively to charges for carrying passengers and freight. This saving of one penal clause in the old law signifies knowledge and belief on the part of the legislature that, without it, the act would be construed as having repealed all such provisions. The Act of 1879 affected nothing in the Act of 1872-73 except the penal provision thereof, for nothing other than the creation of a public offense and the imposition of punishment therefor is included in its title or its provisions. The rates prescribed by the old act were left unaffected. The repeal extended only to the matter of penalties, just as in the case of the statute involved in *Commonwealth* v. *Pegram,* 1 Leigh 569, and *Commowealth* v. *Wyatt,* 6 Rand. 694.

The principle applied here has been stated by the Supreme Court of the United States in the following terms: "Where the later of two acts covers the whole subject matter of the earlier one, not purporting to amend it, and plainly shows that it was intended to be a substitute for the earlier act, such later act will operate as a repeal of the earlier one, though the two are not repugnant." *District of Columbia* v. *Hutton,* 143 U. S. 18. This Court, in *Herron* v. *Carson,* 26 W. Va. 62, has stated it in these terms: "A subsequent statute revising the

whole subject matter of a former one and evidently intended
as a substitute for it, though it contains no express words to that
effect, must, on principles of law as well as in reason and com-
mon sense, operate a repeal of the former law." It has been
applied by this Court in other cases. *State* v. *Harden,* 62 W.
Va. 313; *State* v. *Mines,* 38 W. Va. 125. Scores of additional
cases of the same class could be enumerated. See *United States*
v. *Claflin,* 97 U. S. 546; *Eckloff* v. *District of Columbia,* 135
U. S. 240; *Morris* v. *Crocker,* 13 How. (U. S.) 429; *Mitchell*
v. *Brown,* 1 Ell. & Ell. 267; *Parry* v. *Croydon Gas Co.,* 15 C.
B. (N. S.) 568; *Heckman* v. *Pinckney,* 81 N. Y. 211; *United
States* v. *Tynen,* 11 Wall. 88; *Commonwealth* v. *Killiher,* 12
Allen (Mass.) 480; *State* v. *Campbell,* 44 Wis. 529. Under
this rule the implication does not rest on inconsistency or re-
pugnancy, in the restricted sense in which these terms are gen-
erally used. It arises as a matter of legislative intention, dis-
closed by the character of the act, its title or preamble and sub-
ject matter, and inconsistency, so far as it may be deemed to
enter into the inquiry is of a broader kind, namely, inconsistency
between the old law and the legislative intent shown by the new.
It is not inconsistency or repugnancy between words, phrases
or clauses, considered as such, but inconsistency between the
acts considered as entireties.

As applied to criminal statutes, the operation of this rule
and the exceptions thereto are stated in Lewis' Suthe. Stat.
Cons., sections 251 and 252, as follows: "Where a statute pre-
scribes a new punishment for a common law offense, it is still a
common law offense, and only the punishment is changed."
Note here that the old penalty is repealed by implication. "But
where a common law offense is defined and enacted by statute,
which also prescribes the penalty, the common law is repealed
and the offense is thus made a statutory offense. A change in
the elements of the offense or in the elements or amount of the
penalty will destroy the identity of the offense and effect a re-
peal to the extent of the repugnancy.     *  *  *     Where a later
statute contains no reference to the former statute, and de-
fines an offense containing some of the elements constituting the
offense defined in such former statute and other elements, it is a
new and substantive offense. The two statutes can stand to-
gether and there is no repeal. So if the later statute prescribe

a punishment for acts with only a part of the ingredients or incidents essential to constitute the offense defined in a former statute. But if the same offense, defined by name or otherwise, is altered in degrees or incidents, or if a felony is changed to a misdemeanor, or *vice versa,* the statute making such changes has the effect to repeal the former statute. * * * * The revision of criminal law or new legislation which manifestly is intended to furnish the only rule that shall govern has the same effect as like legislation has on other subjects. * * * A statute providing for or defining an offense created by a previous statute, and providing a materially different punishment, repeals the former act."

Sensible of the danger of a misapplication of general principles, and deeming it more satisfactory to the parties affected to have the application, as well as the general principle, sustained by reference to cases directly in point, we have taken the trouble to find them. In *Perrine* v. *Van Note,* 1 South. (N. J.) 146, the action was for penalties founded upon a statute providing that if any person, without a license, should sell by retail liquors of any kind to any other person in a quantity less than one quart, he should forfeit for every offense the sum of ten dollars, to be recovered by an action of debt by any person who might sue for it. A later act made the offense indictable and fixed the fine at any sum not exceeding twenty dollars. Chief Justice Kirkpatrick expressed the opinion that the penalty, allowed by the first act, was repealed by the second, although he did not decide the case on that point. In the later case of *Buckallew* v. *Ackerman* 3 Halstead 58, he did apply the principle. This was an act passed February 24, 1797. A later act, passed February 12, 1814, imposed a different penalty in favor of the state. It was held that no recovery could be had under the former act. In *Gorman* v. *Hammond,* 28 Ga. 85, the same conclusion was reached upon the following state of facts: An action of debt was brought by an individual for the recovery of penalties, allowed by an act passed in 1804 for the making of false returns of property for the purposes of taxation. The old act inflicted a penalty of ten dollars for every hundred dollars of valuation neglected or concealed, one-half of which was for the use of the county and the other half for the use of the informer, and it was recoverable in any court having cognizance of the same.

A later act provided that in such case the offender should be doubly taxed for the first year, trebly taxed for the second, and so on, adding a tax for each default until the return should be made. It was held that this repealed the penalty given by the former act. *Nichols* v. *Squires,* 5 Pick. 168, was a *qui tam* action, founded upon a statute passed in 1785, for the suppression of lotteries. A new statute, passed in 1817, covered the subject matter of the old act and provided a new penalty. The Court said: "By the statute of 1817 the selling of tickets in any lottery not granted or permitted by this commonwealth, is prohibited under a new penalty; and where the legislature impose a second penalty for an offense, whether smaller or larger than the former one, a party cannot be allowed to sue on one or the other at his option. This point of a repeal by implication is supported by authority." The Court then cited *Bartlett* v. *King,* 12 Mass. 537.

Anticipating the possible objection that this case belongs to the class in which it is held no repeal by implication occurs, we have examined cases of that kind. In these instances, there is something in the act, showing lack of intent to make it cover the entire subject matter of the former statute, or intention to make the penalty cumulative as a means of procuring a more perfect and rigid enforcement of the regulation involved. Such was *Dr. Foster's Case,* 11 Coke 56. Foster was proceeded against by information under a statute, imposing a forfeiture of twenty pounds for failure to repair to any parish church or other church or chapel or usual place of common prayer or divine service. A later statute inflicted an additional penalty of twenty pounds for every month, contained in the indictment upon which there should be a conviction, and also for every month of failure after conviction, which the defendant was required to pay into the exchequer without any other indictment. One of his contentions was that the former act was repealed in respect to the penalty thereof by the later one. In deciding adversely to him, the court observed that the title of the new act described it as one "For the speedy execution of certain branches" of the former statute, naming it, and also, that, by its terms and provisions, it gave more speedy execution. Stress was also laid upon the fact that the new act did not give the penalty to any new person. Another test was that it referred to the old act

and conviction thereunder and denounced additional penalties by
the month.    There was another reference to the old act in the
provision that the informer should not have the benefit of the
new unless he should "hereafter fortune to be convicted" under
the old act.    In *Mitchell* v. *Duncan,* 7 Fla. 13, the contention
of a repeal by implication was rejected because it appeared that
the new statute was cumulative and did not cover the entire
subject matter of the old one.    To the same effect, see *Cate* v.
*The State,* 3 Sneed (Tenn.) 120.    The principle of cummulative
provisions is well illustrated in *Gray* v. *Cookson,* 16 East 13.
The statute of 20 Geo. II empowered justices to commit an ap-
prentice for any misdemeanor or ill behavior in his service for
hearing and determination of the offense.    A later statute em-
powered them to oblige an apprentice, absenting himself from
service, to serve out, after the expiration of the apprenticeship,
the time of his absence or make satisfaction for it.    The Court
said the remedy given by the section of the statute was cumula-
tive.    *Rex* v. *Jackson,* 1 Cowper 297, illustrates the same prin-
ciple.    There was a number of statutes imposing punishment
for the making of silver plates under the standard alloy.    Lord
Mansfield said : "The stat. 12 Geo. •2, c. 26, in the preamble
recites the statute of 28 Ed. 1. 2 H. 6. and 18 Eliz., and two
other acts respecting country assay offices, and recites them as
subsisting laws; and that, notwithstanding the aforesaid acts of
parliament, great frauds were daily committed in the manufac-
turing gold and silver wares, for want of sufficient power effect-
ually to prevent the same; and therefore, section 1, inflicts a
penalty of £10 for every offense, recoverable by action: but
this act says not one word as to the repeal of any of the former
laws.    Now it is a general rule, that subsequent statutes which
add accumulative penalties, do not repeal former statutes."    It
is to be observed here that the act construed in *Rex* v. *Jackson*
recited the former laws as still subsisting, thus indicating in-
tent not to repeal them.    In *Jennings* v. *Commonwealth,* 17
Pick. 80, a statute having for its expressed object the prevention
of poverty as well as lewdness, and providing for conviction and
confinement in the work house of persons guilty of the offense,
and inhibiting such persons from thereafter keeping boarders
without the license of the overseers, was held not to have re-
pealed the common law making it an offense to keep a house of

ill fame for lucre.  Chief Justice Shaw, distinguishing the case
from others, said "The object and purpose of the statute seems
to be different, in some respects, from that of the common law,
and made *alio intuitu.*  The provision is not only found in a
statute made for the general purpose of relieving the poor and
preventing pauperism, but the enactment in question is intro-
duced by a preamble, setting forth the purpose, to prevent pov-
erty as well as lewdness, and then goes on to provide a summary
mode of breaking up houses of prostitution.  The keeper is
to be ordered for a short period to the house of correction, and
forever disabled from keeping lodgers or boarders, without a spe-
cial license.  If the purpose is punishment, it is not the sole, and
perhaps it may be reasonably inferred, not the leading purpose."
He therefore regarded the punishment as cumulative.  Simi-
larly, in *Hastings* v. *Aiken,* 1 Gray 163, a statute imposing a
penalty on the owner or keeper of any livery stable erected and
used in Boston within one hundred and seventy feet of a church,
was held not to have been repealed by another statute imposing
a penalty of fifty dollars a month on any person for using or
keeping any building in any marine town for the business of a
sail-maker or rigger, or keeper of a livery stable, except in such
parts of the town as the selectmen thereof should direct.  The
later statute was a re-enactment of an older one in date than
the former, and the Court held that the former was ancillary to
the other and not inconsistent therewith.  This conclusion might
have been reached upon the theory that the latter was a special
law not repealed or affected by the general statute.

  As the repealed section of the Act of 1872-73 now appears
in the Code, thirty years after the date of the repeal thereof,
it may be suggested that this negatives the conclusion stated
in the opinion.  In answer to this possible suggestion, it suffices
to say none of the codes of the state, except that of 1868, con-
stitute revisions or re-enactments.  They are mere re-publica-
tions, as will be seen by reference to the several joint resolu-
tions authorizing them, and acts, appropriating money to pay
for them.  The Code of 1868 was a re-enactment.  It is preceded
by an act in legislative form and ends with section 166, declaring
that the provisions of the preceding chapter should be in force
upon and after the first day of April, 1869.  That chapter is
found in all the later codes.  Hence, it is clear that all these

later codes are mere compilations, made by private persons and published for public convenience at the expense of the state. It is utterly impossible that a repealed statute could be revived or re-enacted into law by such action. Therefore, all the provisions of the later codes, except such as appear in that of 1868, must be construed and dealt with just as if they had never been published in a single volume.

In view of these principles, we are clearly of the opinion that the declaration shows no right of recovery, and that the dedemurrer should have been sustained. We therefore reverse the judgment, set aside the verdict and sustain the demurrer to the declaration; and, seeing that no cause of action, within the jurisdiction of the circuit court, can be predicated on the facts, stated in the declaration, since the overcharges, complained of, amount in the aggregate to only a few cents, we dismiss the action with costs and damages according to law, all of which will be certified to the circuit court of Wetzel county.

BRANNON, JUDGE:

I do not dissent, but I have serious doubt whether the law of 1872-3 is repealed.

*Reversed and Judgment for Defendant.*