# CHARLESTON.

J. E. OVERTON, ADM'R. V. VIDA MAY HECKATHORN *et al.*

Submitted February 1, 1918.   Decided February 12, 1918.

1. STATUTES—*Intent—Antecedent Laws.*

   Intention plainly expressed by terms used in a statute passed
   by the legislature, with intent to make it the comprehensive and
   exclusive rule of law as to its subject matter and a complete sub-
   stitute for the previous law of that subject, whether statutory,
   common or civil, is not restrained or limited by the antecedent
   law, even though it may seem to have prescribed a more equitable
   rule than that found in such terms. (p. 643).

2. DESCENT AND DISTRIBUTION—*Nieces and Nephews—Division—
   Statute.*

   Under the provisions of secs. 1, 3 and 9 of ch. 78 of the Code,
   the estate of a deceased person, leaving surviving him only nieces
   and nephews and grand-nieces and nephews, collateral relations
   of the whole blood, is divided into a number of shares equal to the
   whole number of nieces and nephews living and represented by
   the issue of those dead, one of which goes to each of those living
   and one to each class of the descendants of those dead, the latter
   for equal division among the members of such class. (p. 642).

3. SAME—*Class—Statute.*

   In the prescription of the basis of distribution, secs. 1 and 3
   of said chapter do not go beyond classes of persons having living
   representatives. They take the nearest class having one or more
   living representatives, and, if some of that class are dead, their
   descendants take the shares their ancestors would have received,
   had they survived the intestate. (p. 642).

Appeal from Circuit Court, Ritchie County.

Suit by J. E. Overton, administrator of the estate of R.

B. Cuthbert, opposed by Vida May Heckathorn and others and James A. Cuthbert and others. From the decree, Vida May Heckathorn and others appeal.

*Affirmed.*

*Chas. M. Showalter and Reese Blizzard,* for appellants.

*Smith D. Turner,* for appellee.

POFFENBARGER, PRESIDENT:

The decree brought up by this appeal was made and entered on a bill of conformity filed by the administrator of R. B. Cuthbert, for advice and instruction as to the distribution of an estate appraised at more than $77,000.00, of which less than $15,000.00 was personal property. Its value no doubt greatly exceeds the appraisement.

The controversy among the heirs, necessitating resort to a court of equity, by the administrator, grows out of a difference of opinion respecting the interpretation of sections 1, 3 and 9 of chapter 78 of the Code, the statute of descents and distributions. All of the heirs are collateral, the descendants of a brother and two sisters who predeceased the intestate whose estate is involved. The descendants of the dead brother are two sons, a daughter and three grand-children, issue of a dead son. Those of one of the dead sisters are Vida May Heckathorn and Ralph T. Heckathorn, her grand-children. Those of the other are three sons, two daughters and two grand-children, issue of a dead daughter. Only the Heckathorn heirs, descendants of Elizabeth Young, a sister, complain of the decree, which allows them only one-eleventh of the estate, while the descendants of George Cuthbert, the brother, are allowed four-elevenths and those of Catherine Hadley, the other sister, six-elevenths. These appellants claim the estate should have been divided into three parts, to correspond with the number of the original collateral kin standing in nearest relation to the decedent, one brother and two sisters, and one of the shares allotted to them. All of these having predeceased the plaintiff's intestate, the court took, as the basis of distribution, the nearest class of collateral kin-

dred, having living representatives, nieces and nephews, of whom eight were living and three had died, leaving issue.

With exceptions not important here, sec. 9 of the statute disposes of the personal estate of a deceased person, after. payment of funeral expenses, administration charges and debts, to and among the same persons, and in the same proportion, as real estate is given. By sec. 1, the real estate goes ''1. To his children and their descendants. 2. If there be no child, nor the descendants of any child, then to his father. 3. If there be no father, then to his mother; brothers and sisters, and their descendants.'' Sec. 3 provides as follows: ''When the children of the intestate, or his mother, brothers and sisters, or his grandmother, uncles and aunts, or any of his female lineal ancestors, living with the children of his deceased lineal ancestors, male or female, in the same degree, come into the partition, they shall take per capita or by person; and where, a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take per stirpes, or by stocks, that is to say, the shares of their deceased parents; but whenever those entitled to partition are all in the same degree of kindred to the intestate, they shall take per capita or by persons.''

The decree construes and applies the statute, in exact accord with the construction an earlier one received at the hands of the court in *Davis* v. *Rowe,* 6 Rand. 355, the decision in which would be as authoritative here, as if it had been rendered by this court, under the same statute and upon a like state of facts. When it was rendered, the Code of 1819 governed, and the law of descents and distributions was verbally altered in 1849, by the insertion of a clause in sec. 3 of ch. 123 of the Code of 1849, at the instance of the Virginia Revisers, which they said, in recommending its adoption, was intended for express adoption of the interpretation put upon the previous statute by a majority of the court, in *Davis* v. *Rowe.* That clause says: ''But whenever those entitled to partition are all in the same degree of kindred to the intestate, they shall take per capita or by persons.'' As so amended, the statute has been retained and continued in this state.

Aside from precedents relied upon, the argument against the trial court's interpertation proceeds upon the assumption of inconsistency with the terms of the statute and the application of the rule under which, ordinarily, statutes are deemed to be merely amendatory of the common law. It does not conflict with the terms. Those of clause four of sec. 1, do not literally apply in full, if there be no living mother, brother or sister, even though there be descendants thereof. When the mother, brothers and sisters are all dead, leaving only descendants, the estate goes to the descendants, and not a word in this clause says they shall take by stocks. They take under general terms of gift, and, being in the same degree of kindred to the intestate, they necessarily come under the opeartion of the clause of sec. 3 governing situations of that kind. A majority of the members of the court, who sat in the case of *Davis* v. *Rowe,* expressly rejected the application of the rule of construction relied upon, and held the then existing statutes pertaining to the subject of descents, to be exclusive of the common law and to have been intended as a substitute for all previously existing law relating to that subject. Such statutes are always interpreted without reference to the antecedent law, except in so far as it may shed light upon the meaning of ambiguous terms used therein. *Grant* v. *B. & O. R. Co.,* 66 W. Va. 175; *State* v. *Harden,* 62 W. Va. 313; *State* v. *Mines,* 38 W. Va. 125. Terms of such a statute, clearly expressing legislative intention, cannot be restrained or limited by reference to the previous law. There is no presumption of intent to leave it in force. The presumption is against such intent.

The precedents in other jurisdictions, invoked here, are all founded upon statutes different from ours, some of which agree with it in principle, while others do not. The North Carolina statute seems to have adopted the rule contended for in argument, in express terms. The Maryland and New York statutes are similar to ours and the decisions under them accorded with the decree complained of. In New Jersey, there seems to be no inclination to go back of classes having living representatives. *Shedaker's Case,* 74 N. J. Eq. 802. In Georgia, common law principles are resorted to in the pro-

cess of construction, but the court does not go beyond living repersentatives for the stocks. *Odam* v. *Caruthers*, 6 Ga. 39. Nothing inconsistent with the principle of the decree is found in any of the precedents referred to, except in those instances in which statutes expressly adopt a different rule.

No error is perceived in the decree and it will be affirmed.

*Affirmed.*