# Richmond

## County School Board of Scott County v. G. E. Dowell.

March 13, 1950.

Record No. 3621.

Present, All the Justices.

The opinion states the case.

Coleman & Coleman and E. H. Richmond, for the appellant.

Quillen & Carter, for the appellee.

MILLER, J., delivered the opinion of the court.

This controversy involves the rights, interests and estate of the parties in an acre of land and improvements thereon, located in Fulkerson District, Scott county, Virginia, and known as the "New Hope School."

In 1898, W. P. Marrs was the owner of a farm in Scott county containing seventy-five acres, more or less. By

deed of October 17, 1898, he and his wife granted to "W. H. Minnich, F. G. Pannell and S. E. Barker, School Trustees of Fulkerson District", Scott county, Virginia, an acre of that farm which was adequately described in the deed. The pertinent parts of that instrument follow:

"That in consideration of the sum of one dollar in hand paid the receipt where—is hereby acknowledged and for further consideration of promoting the cause of public education doth grant and by these presents convey unto the Trustees and their successors a certain lot of land for the purpose of erecting thereon a building to be used as a public schoolhouse for the benefit of the public school of said District." (Here follows a description of the land.) "To have and to hold said lot of land with its appurtenances for the purpose and object aforesaid so long as it is used for public school and when it is *abandon* for such purposes the said lot goes back to the farm it was taken from. The said trustees and their successors to have control of said house as provided by the laws of the Commonwealth of Virginia and the said W. P. Marrs and Kate his wife for themselves and their heirs will warrant and forever defend said lot of land against the claim or claims of all persons whomsoever. * * *."

Shortly after this conveyance, a school building consisting of one room was erected upon the lot and used as a schoolhouse for many years.

Under section 676, Code, 1942 (sec. 22-147, Code, 1950), the School Board of Scott county succeeded to all right, title, interest and estate that had been conveyed to the school trustees. It will be hereinafter referred to as the school board or appellant.

By a later deed of February 24, 1923, W. P. Marrs and wife conveyed to their son, W. H. Marrs, the entire seventy-five acres, more or less, including within the grant the acre of land previously conveyed to the school trustees. There is no question that the description in this deed included the acre theretofore conveyed to the school trustees and that

thereunder W. H. Marrs became the owner of any interest and estate in this acre of land that his father may have retained and was then entitled to grant and convey. Section 5163, Code, 1942 (section 55-49, Code, 1950).

W. H. Marrs and wife conveyed the seventy-five acres to appellee, G. E. Dowell, by deed dated July 9, 1924. The description in this deed likewise included the acre that had been formerly conveyed to the trustees for use as a school site.

By these several grants, appellee became entitled to such estate, interest in and claim to the one acre of land, if any, that remained in W. P. Marrs and was then subject to alienation and grant after his conveyance of October 17, 1898, to the school trustees. Section 5147, Code, 1942 (sec. 55-6, Code, 1950).

Appellee sold and conveyed seventy-five acres, less the one acre school lot, to Daisy Fleenor on August 12, 1924. The farm, less the one acre, as acquired by Daisy Fleenor, has been divided into three or four tracts which have been sold and are now owned by a like number of persons.

During the spring or early summer of 1946, the school board ceased to use the land and building for school purposes, and no school has been conducted in the building since that time. Under claim that the property had been abandoned and that in such event he was the owner thereof and entitled to its use and enjoyment, appellee took possession of the premises in the spring of 1948. He undertook to remodel the building and began tilling the ground for a garden. As a result of his asserted claim of ownership, this suit was instituted against him by the school board, which sought to enjoin him from using the premises as his own, and prayed for an adjudication of the rights of the parties in the parcel of land and for general relief.

An answer was filed by appellee in which he asserted that the school board had abandoned the property for public school use and that he was the reversionary owner. He prayed that his answer be treated as a cross-bill and for

an adjudication and declaration that he was the owner of the property, free from any interest, right or claim of the school board.

Testimony was taken in deposition form and upon that evidence and the exhibits presented, the chancellor found that the property had been abandoned for *school purposes*. It was decreed that appellant had no further right, title or interest in the lot of land and the bill was dismissed.

If this be correct, then it follows that under the deed from W. P. Marrs and wife, to W. H. Marrs, and that from W. H. Marrs and wife, to G. E. Dowell, each of which undertook to grant all of the right, interest and estate that the respective grantors had in the lot, appellee would now be the owner of any conveyable right, interest or estate which was left in W. P. Marrs when he deeded the lot to the school trustees, unless the lot has been conveyed or encumbered in some manner other than that disclosed by this record.

Irrespective of whether or not there has been an abandonment of the property for school purposes, the school board claims fee simple ownership of the lot under the deed of October 17, 1898.

The pleadings and evidence disclose the existence of an actual controversy and the antagonistic assertion and denial of rights by the parties litigant. We therefore think that we should determine the rights and interests of the parties in and to the real estate in litigation.

The questions presented are: (1) Does the evidence sustain the factual finding of the chancellor, and (2) Has the appellant any further right, title, claim or interest in the acre of real estate, or is appellee the owner thereof and entitled to its possession, use and enjoyment?

The testimony is conflicting and therefore the factual conclusion of the chancellor is entitled to great weight. The decree is presumed to be correct in that respect, and if fairly supported by competent and credible evidence, it may not be disturbed. *Ashby* v. *Dumouchelle*, 185 Va. 724, 40 S. E.

(2d) 493, and *Stutzman* v. *Nash & Son*, 189 Va. 438, 53 S. E. (2d) 45.

Summarized, the evidence shows the following facts: The School Board of Scott county experienced difficulty in securing a teacher to serve in the New Hope School for the year 1946-47. Appellant thereupon ceased to use the land and building for school purposes during that school year. A bus was secured to furnish transportation for the pupils, some sixteen in number, to a more commodious and better equipped school, which was located at Hiltons, some miles distant. There have been no further efforts made to secure a teacher or to reopen the New Hope School. Since the early fall of 1946, the pupils residing in that neighborhood have been transported by bus and have attended the larger school at Hiltons.

By the spring of 1948, the yard to the New Hope School had grown up in bushes and weeds. Vandals had broken out the windows in the schoolhouse, and the inside of the building disclosed that trespassers had at times entered and used the same. The roof had to be repaired to prevent its leaking and the building was falling into bad repair and the premises into ill-repute. Appellee briefly describes its conditions as follows:

"Asked Mr. Jett to go with me for him to see the shape the building was in. Thirty-five of the glasses broken out, glass all over the place. Door just like that out on the east side, lights all broken up. Been building fires, some of the old weather boarding off the building. Had benches around the stove, shot through one window, about the biggest damage. I bought thirty-six lights and put all in but two."

At the time the despositions in this cause were being taken, four new rooms were being added to the school at Hiltons so that it would be better fitted to house the pupils in attendance there. The evidence also establishes the fact that during the last few years, the use of three or four other one-room schools in Fulkerson District had to be discontinued, and the childen transported to Hiltons. In one or more

instances, the buildings and land in and on which these one-room schools were conducted have been sold.

Before entering upon and taking charge of the premises in the spring of 1948, appellee informed at least one member of the school board and the County Superintendent of Public Schools that he considered the building and premises had been abandoned for school purposes and the property belonged to him and he intended to take charge of it. Though no express permission was given to him to take charge of the premises, he was told by the superintendent that his claim had been taken up with the school board and "so far as he got out of them said he didn't believe they expected to use it anymore." Appellee was informed where he could obtain the key to the building, and upon securing it, he took charge of the premises and hauled such books and desks as he found thereon to Hiltons and delivered them there in accordance with directions of the superintendent. In fact he says that the school superintendent and the school board member from that district advised him as far as they knew they would not use it any more and had "figured abandoning it the year or two before they got the busses."

After entering upon the premises, appellee cleared and plowed part of the land for a garden; dug a well at the expense of $105 and expended $360 in partitioning the school room into smaller rooms, thus remodeling the building for living quarters. When these repairs and expenditures had been made, the school board, not of its own initiative, but at the insistence of certain residents in the community, instituted this suit. However, before the board enacted the resolution authorizing the institution of legal proceedings, it required the interested citizens to obligate themselves to defray the expense incident to employment of counsel to conduct the litigation.

We are not unmindful that it is not to be lightly concluded that one has voluntarily relinquished possession of property with intent to end all ownership, and that mere non-user and lapse of time are not generally enough to

constitute abandonment. However, there are here additional facts that strongly tend to establish an intent to abandon. For two years this property had been unoccupied for the purpose for which it was conveyed. It was allowed to reach a state of near dilapidation. Means for transporting the few pupils who yearly attended the school to a better and more suitable one had been provided at considerable cost. After notice and demand, appellee was, without protest from those in authority, allowed to reenter the premises and he has since expended considerable money to repair, remodel and improve it. Even now there is no definite evidence of either purpose or plan to again use the property for school purposes. The overall picture and the conduct of the school board definitely tends to lead one to the conclusion that the property will not be used for school purposes in the future.

 Abandonment must be proved by clear and convincing evidence. It is also true that the inferences or conclusion to be drawn from the proved facts might not necessarily be that the school board has abandoned this property for use as a public school. Yet, the experienced trial judge, who has presided in the county for many years and who is fully cognizant of the local school conditions, is in a much better position than we to determine what just inferences may and should be drawn from the facts. As said in *Harris* v. *Citizens Bank, etc., Co.,* 172 Va. 111, at p. 132, 200 S. E. 652:

"His knowledge of local conditions is more accurate than ours could possibly be * * *."

 We cannot say that the conclusion of the trial judge, that this property had been abandoned for school purposes, is unreasonable or not supported by credible and substantial evidence.

Having concluded that the chancellor committed no error in his decision on the factual issue presented, we look to the deed of October 17, 1898, to determine what right, interest or estate, if any, the respective litigants, or either of them, are entitled to in the acre of land involved.

As it appears in the deed, the granting clause, standing alone and without limitation, would, we think, convey a full fee simple, and if there is no conflict in any of the provisions of the deed and no repugnancy results, all parts thereof should be given effect and the intention of the parties so attained. 16 Am. Jur., "Deeds", sections 170, 171, 237, and 239, pp. 533, 570, and 573.

When the granting clause, wherein it is recited that the lot is conveyed "for the purpose of erecting thereon a building to be used as a public school house" is read and considered along with that part of the *habendum* which expressly states that the trustees were entitled "To have and to hold" the lot "so long as it is used for public school," it is apparent that the estate sought to be vested in the trustees was what is termed a base, qualified or terminable fee. Graves, Notes on Real Property, sec. 37, p. 42; 1 Minor on Real Property, 2nd Ed., secs. 164, 165 and 168, at pp. 225, 226 and 229; *Talbot v. Norfolk*, 152 Va. 851, 148 S. E. 865.

We are further of opinion that when the conveyance of October 17, 1898, was made by W. P. Marrs to the school trustees, the interest or right intended to be left undisposed of was not a full or true reversion. The grant being limited upon a condition that might never transpire, only a possibility of reverter was sought to be retained by the grantor. 1 Minor, Real Property, 2nd Ed., sections 164, 167, pp. 225, 228. As distinguished from a true reversion which is a vested estate *in praesenti*, with enjoyment *in futuro*, a possibility of reverter is but a possibility of having an estate in the future, the obtaining and enjoyment thereof being contingent upon termination of the preceding base, qualified or terminable fee. The estate intended to be granted might last forever and its enjoyment be in perpetuity, but if and when the lot was abandoned for public school purposes, that estate was to end.

Had there been no further designation of where the possibility of reverter should go upon abandonment of the lot for school purposes, the grantor would be again

entitled to enjoyment of his full original estate. *Talbot* v. *Norfolk, supra; Trice* v. *Powell*, 168 Va. 397, 191 S. E. 758; 19 Am. Jur., "Estates," sections 28, 31 and 36, pp. 486, 491 and 496; 31 C. J. S., "Estates", sections 10 and 105, pp. 24 and 125; 26 C. J. S., "Deeds", sections 110 and 115, pp. 400 and 411; Preliminary Survey of the Law of Real Property, Moynihan, ch. 2, "Estates", p. 19; 1, Minor, Real Property, 2nd Ed. sections 167 and 769, pp. 228 and 1005; Vol. 1, Restatement, Law of Property, sec. 44, p. 121.

If this right, *i. e.*, possibility of reverter,—was actually retained by the grantor, by force of sec. 5147, Code, 1942 (sec. 55-6, Code, 1950), that interest in or claim to real estate could be disposed of by deed or will. *Copenhaver* v. *Pendleton*, 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324; *Wilson* v. *Langhorne*, 102 Va. 631, 638, 47 S. E. 871; 1 Minor, Real Property, 2nd Ed., sec. 523, p. 685. By the successive conveyances of the seventy-five acre tract, which included within their description the one-acre school lot, that interest, right and claim, *i. e.*, possibility of reverter in the one acre would have, without more, become vested in appellee. *Copenhaver* v. *Pendleton, supra.*

But appellant asserts that though it be true that the property has actually been abandoned for public school purposes, it enjoys an absolute fee simple ownership therein because, under the peculiar provisions of the deed, there was no possibility of reverter in the grantor. That, it says, is true because the deed provided that upon abandonment for public school purposes "the land goes back to the *farm* it was taken from." (Emphasis added). It is contended that the possibility of reverter attempted to be retained was not to or for the grantor, but being retained in or directed to return to the farm, it violates the rule against perpetuities. It is then argued that it necessarily follows that the entire paragraph in the *habendum* of which those words which attempt to place the possibility of reverter in the farm instead of retain it in the grantor, and which paragraph, without those words, would otherwise operate to limit the grant to the

trustees to a base, qualified or terminable fee, falls in *toto* and is of no effect. Thus it is insisted that the granting clause, unlimited and unqualified by the *habendum*, grants and conveys an absolute fee simple estate to the school trustees. With this we cannot agree.

The fallacy in appellant's contention is two-fold—(1) the assumption or conclusion that the deed by a fair interpretation does not sufficiently designate the grantor as the party in whom the possibility of reverter rested is not justified; (2) nor is it true that the whole of the *habendum*, including that part which reads, "To have and to hold * * * for the purpose and object aforesaid so long as it is used for public school" is void because the words "goes back to the farm it was taken from" are ineffectual.

At common law the possibility of reverter was not an estate subject to grant. It did not attain that dignity until the contingency took place which extinguished the base, qualified or terminable estate. It was not until then that it ripened into an estate *in praesenti* subject to enjoyment, alienation and grant. Yet at common law it was recognized that, if retained by and resting in the creator of the base, qualified or terminable fee, it was subject to and did pass by inheritance to his heir and upon extinguishment and termination of the base, qualified or terminable fee, the full original estate which had formerly been owned and enjoyed by the grantor revested in his heir.

Though this possibility of reverter did not ripen into an estate until the termination of the base or qualified fee and so the estate might not vest, or more accurately revest, in the grantor or his heirs until generations later, it was not void as violative of the rule against perpetuities. This was true simply because the base or qualified estate was already vested and the possibility of reverter is in Virginia and generally in the United States considered not an outstanding estate, and as only estates are required to vest during the life or lives of those in being and twenty-one years and ten months thereafter, the non-vesting of a mere possibility of an estate

did not and could not violate the rule.  19 Am. Jur., "Estates," sec. 31, p. 491; 1 Minor, Real Property, 2nd Ed., sec. 780 and cases cited therein.

■ The right and power to dispose of this possibility of reverter by deed or will before termination of the base or determinable fee has now been given by sections 5147 and 5227, Code, 1942 (sections 55-6 and 64-48, Code, 1950); *Copenhaver* v. *Pendleton, supra.*

■ Yet the grant, qualified and limited as it was by the language in the habendum, was not an absolute fee simple and the provision that the possibility of reverter be to the farm, which was an insufficient clause attempting to identify the person in whom the possibility would rest necessarily leaves the grantor, the then owner of the farm, the person in whom the possibility of reverter would vest. This is true for the reason that if a special limitation (which this is) fails because of insufficiency, then one must look at the deed as a whole to determine the intent of the grantor. Vol. 2, Restatement of the Law of Property, sections 228 and 229.

In addition, the granting clause, disclosing as it does the reason for the grant and the terms of express limitation imposed by the *habendum,—i. e.,* "To have and to hold * * * for the purpose and object aforesaid so long as it is used for public school * * *"—make the duration of the granted estate dependent upon its continued use for the purpose specified. Fairly construed, the estate granted was not intended to be and was not in fact an absolute fee simple, but an estate whose duration should exist and continue until the happening of a specified event and then it was to cease and determine.

Because the possibility of reverter was sought to be retained to "the farm" and, due to its vagueness and the uncertainty of ascertainment of the reversioner, is impossible of performance, that does not enlarge the base or qualified fee, for other language has clearly fixed its quality and

limited its duration. *First Universalist Society* v. *Boland,* 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231.

The retention of a possibility of reverter was not the grant of an immediate estate which requires that there be then in existence an ascertained person, natural or artifical, to take as grantee of the immediate estate. It was but a retention of the remnant of the estate, or more definitely and accurately stated, a possibility of an estate, and we think the language used was sufficient to identify the then grantor, W. P. Marrs, as the then designated and intended beneficiary, recipient and retainer of the inchoate interest and possibility of reverter ungranted by the deed. If it was not and the words or phrase, "the said lot goes back to the farm it was taken from" are found to be and are deemed ineffectual and inoperative, yet the other language of the deed is effectual and limits the estate granted to a base or qualified fee with the possibility of reverter necessarily remaining in the grantor, W. P. Marrs.

The base, qualified and terminable fee vested in appellant has now been terminated and extinguished. Through successive grants and conveyances, the possibility of reverter, interest in or claim to real estate (now enlarged into full character of an estate by the extinguishment of the base or terminable fee) has now become vested in appellee. He is therefore the owner of and entitled to the use and enjoyment of the lot and real estate in question.

For the reasons stated, the decree of the trial court is affirmed in accordance with this opinion.

*Affirmed.*