THE CITY OF WHEELING, *a municipal corporation*

*v.*

PAUL E. ZANE, *et al., etc.*

*and*

CORDELIA HAYS, *et al.*

(No. 12804)

Submitted February 17, 1970.     Decided March 31, 1970.

*Jay T. McCamic, Frank A. O'Brien, Jr., Abraham Pinsky,* for appellants.

*Gompers & Buch, Joseph A. Gompers, Harry L. Buch, James F. Companion,* for one of defendants below, for appellees.

*Francis J. Love,* for defendants below.

HAYMOND, JUDGE:

In this proceeding in eminent domain, instituted in the Circuit Court of Ohio County, the applicant and petitioner, The City of Wheeling, a municipal corporation, acquired a certain lot or parcel of land in that city, which was formerly owned by Noah Zane. Under a deed dated January 13, 1821, made by Noah Zane to The City of Wheeling, the city used and occupied the land as a "market house" until March 24, 1964. In the deed the grantor Zane expressly retained the power to re-enter upon and possess and enjoy the land conveyed when the city ceased to use it as a "market house." After the breach of condition by the city, when it discontinued the use of the property as a "market house," the heirs of Noah Zane exercised the right of re-entry and entered and took possession of the land. Subsequently The City of Wheeling instituted this proceeding in eminent domain and again acquired ownership of the property.

Commissioners appointed reported $85,000.00 as just compensation and, by order entered July 28, 1966, the court approved and confirmed the report of the commissioners, and referred the proceeding to a commissioner of the court to take the evidence of all the parties and to determine the rights and claims of all persons entitled to the money paid into court or to any interest or share in it. The commissioner reported that the interest or right of re-entry in the land descended to the living heirs of Noah Zane at the time of his death, which appears to have occurred about the year 1831, and to their heirs upon their deaths, and so on, and that the defendants as the heirs of Noah Zane owned these respective interests in the land and are entitled to such interests in the compensation award: Thomas Russell Shelton, Jr., as the descendant of Carolina Z. Shriver, the daughter and one of the two living heirs of Noah Zane at the time of his death, an undivided one-half ( ½ ) or thirty-two sixty-fourths ( 32/64ths) interest, and the remaining twelve defendants, as the descendants of Platoff Zane, the son and other living heir of Noah Zane at the time of his death, the remaining undivided one-half ( ½ ) or thirty-two sixty-fourths ( 32/64ths) interest in these proportions: Diane H. Haire, four sixty-fourths ( 4/64ths); Mary E. Ridgely, four sixty-fourths ( 4/64ths); Alexander Euston, two sixty-fourths ( 2/64ths); Elmer Euston, two sixty-fourths ( 2/64ths); William L. Woods, one sixty-fourth ( 1/64th); Bette W. Hugus, one sixty-fourth ( 1/64th); T. M. Cummins, Jr., one sixty-fourth ( 1/64th); Blanche C. Davis, one sixty-fourth ( 1/64th); Paul E. Zane, four sixty-fourths ( 4/64ths); Ellsworth Zane, four sixty-fourths ( 4/64ths); Eugene Zane, four sixty-fourths ( 4/64ths); and Betty Z. Hercules, four sixty-fourths ( 4/64ths), all of which interests are shown by the Noah Zane family tree filed as Exhibit E with the report of the commissioner.

The report was filed by order entered June 9, 1967, at which time certain defendants filed exceptions to the report and the court took under advisement the determination of the share of each party in interest with leave to counsel for each of the parties to file briefs.

On November 30, 1967, a hearing was had upon the report, the exceptions to it, and the briefs and the arguments of counsel for the respective parties. By final judgment rendered April 24, 1968, the circuit court, for reasons set forth in a memorandum of opinion filed as part of the record in this proceeding, held that the parties, as heirs of Noah Zane, were entitled to distribution in the respective shares reported by the commissioner as indicated in Exhibit E with the report and as set forth earlier in this opinion, overruled the motion of those who excepted to the report for a rehearing, and required the costs of the proceeding to be paid by the petitioner, The City of Wheeling.

From the final judgment of April 24, 1968, this Court granted this appeal upon the application of the defendants and appellants Diane H. Haire (Cordelia E. Hays), Mary E. Ridgely, Alexander Euston, Elmer Euston, William L. Woods, Betty W. Hugus, T. M. Cummins, Jr. and Blanche C. Davis.

The error assigned and relied upon for reversal by the appellants is that the judgment of the circuit court is violative of Section 3, Article 1, Chapter 42, Code, 1931, as amended, and contrary to the decision of this Court in *Overton v. Heckathorn*, 81 W.Va. 640, 95 S.E. 82, and the decisions in other cited cases.

The appellants contend, in substance, that the heirs of Noah Zane are to be determined with respect to the right of re-entry at the time the breach of condition occurred and the right of re-entry accrued in 1964; that the right of re-entry did not descend to the two children and heirs at law of Noah Zane at the time of his death but instead descended to his heirs at the time the re-entry accrued; that under Section 3, Article 1, Chapter 42, Code, 1931, as amended, which applies to the right of re-entry, persons in equal degree of kinship to the intestate ancestor take per capita and that when some of them are dead and some are living the descendants of the deceased persons of the class take the share of their deceased ancestor per stirpes.

The present controversy in this proceeding is between the present heirs of Noah Zane, who are the appellants and the other defendants, with respect to the interest of each in the compensation paid for the land. The appellants are some of the direct descendants of Platoff Zane, the surviving son of Noah Zane, the defendant Thomas Russell Shelton, Jr., is a direct descendant of Carolina Z. Shriver, the surviving daughter of Noah Zane, and the defendants Paul E. Zane, Ellsworth Zane, Eugene Zane and Betty Z. Hercules are the other direct descendants of Platoff Zane.

The questions for determination are whether the right of re-entry is inheritable and if so whether it descends to the heirs of the grantor at the time of his death or to his heirs at the time such right of re-entry accrues and is exercised.

No decision of this Court considers and resolves the precise questions presented by this appeal and they are questions of first impression in this State. They have been considered and determined, however, by appellate courts in other jurisdictions and though there is some conflict in the decisions, the clear weight of authority is that right of re-entry and possibility of reverter are descendible in the same manner as other future interests, that statutes of descent and distribution apply to a right of re-entry and a possibility of reverter, and that they descend to the heir of the original owner at the time of the death of such owner.

A possibility of reverter, as distinguished from a reversion, is not an estate at common law and in the case of a fee limited on a condition subsequent a possibility of reverter is a contingent right of re-entry on condition broken. At common law a possibility of reverter is inalienable, is not assignable and is not devisable. It is, however, descendible and may be released by the grantor. 31 C.J.S., *Estates*, Section 105b.

In 23 AM. JUR. 2d, *Descent and Distribution*, Section 34, the text contains these statements: "A right of entry, or power of termination, a future interest which arises upon the creation of an estate with a condition subsequent, is not extinguished by the death of the owner thereof, and the right

to take advantage of it passes to his heirs. Under the view generally followed in this country a right of entry follows the same course of descent as possessory interests, but there are some cases to the contrary."

It has been said that the right of entry is not an estate, not even a possibility of reverter; it is simply a chose in action. TIEDEMAN ON REAL PROPERTY, Third Edition, Section 207. The interest remaining after the creating of a fee on condition may properly be described as a right of entry for condition broken or a contingent right of entry. Annotation, 77 A.L.R. 345. In TIFFANY ON REAL PROPERTY, Third Edition, Section 314, the author says: "The right of re-entry for breach of a condition, annexed to an estate in fee simple, is sometimes referred to as a possibility of reverter. The expression 'revert', however, signifies a return to the grantor of the ownership or possession by operation of law, and is not properly applicable to his reacquisition of the ownership or possession by entry or its equivalent. The right of re-entry in such a case might, consequently, so long as the condition has not been broken, more appropriately be referred to merely as a contingent right of re-entry." Though there is a difference between a possibility of reverter and a right of re-entry for condition broken, the two are sometimes used interchangeably or synonymously and a characteristic of each is that it is inheritable.

In SIMES AND SMITH, THE LAW OF FUTURE INTERESTS, Second Edition, Section 282, the distinction between a possibility of reverter and a right of re-entry for breach of condition is set forth in this language: "As defined in the preceding section, the possibility of reverter is readily distinguished from other future interests. * * * . It is distinguished from the right of entry for breach. of condition factually only by the use of different language in the instrument of conveyance. In terms of legal operation of the two future interests, the principal distinction is clear: the possibility of reverter takes effect in possession immediately and automatically upon the happening of the event named, whereas, on the happening of the event named in a common-law condition'

subsequent, the possessory estate does not vest immediately in the one having the right of entry for breach of condition. He must first elect to terminate the granted estate before the possessory estate vests in him."

With respect to descent of possibilities of reverter and rights of entry for breach of condition the text in Second Edition, Section 1884 of the same treatise, contains these statements: "Logically it would seem that, if the old rule as to the descent of future interests has been abrogated in the United States with respect to other varities of future interests, it is also abrogated as to possibilities of reverter and rights of entry for breach of condition. Such is the view taken by some courts, and supported by the Restatement. * * * . It is difficult to see why such an interest is not inheritable if, as is nearly everywhere conceded, executory interests and contingent remainders pass by inheritance in the same manner as present estates."

In 33 Am. Jur., *Life Estates, Remainders, Etc.*, Section 208, is this language: "The 'right of re-entry,' in consideration of its true nature from the position of an analysis of legal relationships, is really a power, and is sometimes termed a 'power of termination.' Such right of re-entry for condition broken is not a reversion, a possibility of reversion, or any estate in land. It is a mere right or chose in action, and, if it is enforced, the grantor would be in by the failure of a condition, and not by a reverter. It is merely a right or power to terminate the estate of the grantee and retake the same if there is a breach of condition, and has been designated as a mere possibility that a right may arise upon the happening of a contingency." And Section 209 of the same volume contains these statements: "The death of the creator of an estate subject to a condition subsequent does not extinguish the right of re-entry for condition broken, and the right to take advantage of it passes to his heirs, even where not expressly named, because the heirs enforce the condition in the right of the ancestor."

In the leading case of *North v. Graham*, 235 Ill. 178, 85 N.E. 267, 18 L.R.A., N.S., 624, 126 Am. St. Rep. 189, in which

a deed provided for reversion to the grantor if the land should cease to be used for church purposes, the court held that the land reverted to those who were heirs of the grantor at the time of his death and not to those who were his heirs at the time of the happening of the contingency. In the opinion the court said: "Did the land in question revert or descend to the grantor's heirs who were in existence at the time of his death, or to his heirs who were in existence at the time the fee in question terminated? * * * . The right or interest reserved by the deed in question to the grantor and his heirs must have been in some one between the death of the original grantor, Adam Stewart, and the determination of the estate when the property ceased to be used and occupied as a church. It is an interest that is inherited, and therefore must have been cast by descent upon Adam Stewart's heirs at the time of his death, and did not originate at the time the property ceased to be used for church purposes. This conclusion is supported by the great weight of authority, and is in harmony with the customs and practice, not only in this state but of the country at large." Though that case involved a possibility of reverter, the principles enunciated as to descendibility and the time of descent apply to and govern the right of re-entry in the case at bar.

In the Virginia case of *Copenhaver v. Pendleton*, 155 Va. 463, 155 S.E. 802, 77 A.L.R. 324, the Supreme Court of Appeals of Virginia, though dealing with what it characterized as a possibility of reverter, recognized principles which apply equally to a right of re-entry and in the opinion used this pertinent language:

> "A possibility of reverter, as hereinbefore defined, is not an estate, present or future, but a possibility of having an estate. In the case of a base or qualified fee expiring by its own contingent limitation, it is a right to have the fee simple in possession contingent upon the determination of the fee defeasible. In the case of a fee limited upon a condition subsequent, it is a contingent right of re-entry upon condition broken."

The opinion in that case contains this language which represents the holding of the court: "We are therefore of

opinion that in Virginia, upon the death intestate of the creator of the fee after which there is a possibility of reverter, such possibility of reverter immediately descends by inheritance to the person or persons designated by the Virginia statutes of descent. * * * ." See also *Sanford v. Sims,* 191 Va. 644, 66 S.E.2d 495; *County School Board of Scott County v. Dowell,* 190 Va. 676, 58 S.E.2d 38. In the *County School Board* case the opinion contains these statements: "At common law the possibility of reverter was not an estate subject to grant. It did not attain that dignity until the contingency took place which extinguished the base, qualified or terminable estate. It was not until then that it ripened into an estate *in praesenti* subject to enjoyment, alienation and grant. Yet at common law it was recognized that, if retained by and resting in the creator of the base, qualified or terminable fee, it was subject to and did pass by inheritance to his heir and upon extinguishment and termination of the base, qualified or terminable fee, the full original estate which had formerly been owned and enjoyed by the grantor revested in his heir."

The opinion in the *Copenhaver* case also states that there is no difference in the ways in which at common law a contingent remainder, an executory devise or a possibility of reverter was transmitted by an ancestor to his heirs and that at common law the possibility of reverter *is* an inheritable right, which passed by descent to the person who at the time of the happening of the contingency upon which it depended answers the description of the heir of the creator of the fee. The statement that the inheritable right of a possibility of reverter passed by descent to the heir of the creator upon the happening of the contingency, represents the minority view which is recognized in a few states, notably Maryland, New York and South Carolina.

In *Upington v. Corrigan,* 151 N.Y. 143, 45 N.E. 359, 37 L.R.A. 794, the New York court held that a right of re-entry is not an estate and does not descend at common law or under the statute of descent of that state. Headnote 1 to that case states that the right of the grantor to re-enter for breach of

condition subsequent is not an estate or interest in real property descendible to heirs within the statue making such estate devisable, but, on the grantor's death, passes to his heirs to be exercised by them as decedent's representatives and not by virtue of the law of descent.

In South Carolina a possibility of reverter is suspended upon the death of the grantor and remains in abeyance until the occurrence of the contingency when it becomes an estate in those qualifying as the heirs of the grantor; and until the contingency occurs it is not an estate or a present or future right but is a mere possibility and, not being an estate, is not inheritable. *Burnett v. Snoddy*, 199 S. C. 399, 19 S.E.2d 904; *Blount v. Walker*, 31 S. C. 13, 9 S.E. 804; *Adams v. Chaplin*, 10 S. C. Eq. (1 Hill Eq.) 265.

In a well-prepared and scholarly note, dealing with the failure of executory interests and the intestate devolution of possibilities of reverter and rights of entry, by James W. Riddell in 1951, in VIRGINIA LAW REVIEW, Volume 37, part 1, pages 117 to 129, after stating that the great majority of the courts take the position that rights of entry and possibilities of reverter are descendible in the same manner as other future interests and that statutes of descent and distribution abolishing common laws which were designed to do away with the old rules as to reversions, remainders and executory interests apply as well to rights of entry and possibilities of reverter, the author, in discussing the holdings in New York and South Carolina, makes these pertinent comments:

> "At common law possibilities of reverter and rights of entry were not subject to transfer by grant or devise—this being so, no one could be the last purchaser of such an interest and only the grantor or his heirs could take advantage of the right. Therefore upon the happening of the condition those persons entitled must be traced from the creator of the original interest as the person last seised. * * * .

> "It is everywhere admitted that at the time of the act, the person who then answers the description of heir of the original creator of a determinable fee or a fee on condition subsequent could release the

possibility of reverter or the right of entry to the holder of the estate upon which such an interest depended. It would seem to follow from this rule that, upon the death of the creator of the possibility of reverter or right of entry, the right to release it would pass to the grantor's then heir, and at the death of such heir it would pass again to the person then satisfying the description of the creator's heir, and so on through a successive chain of such heirs for the time being until upon the occurrence of the contingency the fee would be subject to entry by, or vest in him who then answers the description of heir of the creator. This is not taking by representation, it is descent, and the possibility of reverter or right of entry is not held in abeyance, for if so, how could it be released by an intermediate heir?"

This Court rejects the minority rule and adheres to the rule supported by the weight of authority and accordingly holds that the right of re-entry retained in the deed from Noah Zane to The City of Wheeling, dated June 13, 1821, which may also be termed a power of termination, though not an estate, is a future interest, which descended to the heirs of the grantor Noah Zane at the time of his death, who were Carolina Z. Shriver and Platoff Zane, and was transmitted by descent to their heirs at law and so on through a successive chain of such heirs to the defendants, who are the present descendants and heirs at law of the grantor Noah Zane, that as such heirs they were vested with an estate in fee simple in the land upon re-entry for breach of condition when the city ceased to use it as a "market house," and that they are presently entitled to share the compensation paid for such land in the proportions determined by the circuit court as indicated earlier in this opinion.

A right of re-entry retained in a conveyance of land, through not an estate, is a future interest which descends to the heir of the grantor at the time of his death and from such heir is transmitted according to the statute of descent and distribution to the heirs of the grantor at the time the right of entry accrues upon breach of the condition provided by the conveyance.

Upon breach of condition subsequent and entry upon land conveyed by deed in which the grantor retained a right of re-entry, his heirs, who are the descendants, under the statute of descent and distribution, of his heir at the time of his death, acquire an immediate possessory estate in fee simple in the land conveyed and are entitled to share, to the extent of their respective interests in the land, the compensation awarded and paid for it when taken from them in a proceeding in eminent domain.

The questions whether possibility of reverter and right of re-entry, though not transferable or devisable at common law, are, by statutes in some states and in this State, transferable or devisable, the cases concerning which in the different jurisdictions are conflicting, need not be and are not determined in this case. It is significant, however, that Section 9, Article 1, Chapter 36, Code, 1931, provides that "Any interest in or claim to real estate or personal property may be lawfully conveyed or devised. Any estate in such property may be made to commence in futuro, by conveyance inter vivos, in like manner as by will, and any estate which would be good as an executory devise or bequest, shall be good if created by conveyance inter vivos." In *Carney v. Kain*, 40 W.Va. 758, 23 S.E. 650, this Court said that a possibility of resulting trust was "somewhat in analogy to the possibility of reverter" and held in point 21 of the syllabus that such possibility of a resulting trust to the heirs of the testator at the time of his death "was transmissible under the statute of descent and distribution, and therefore by devise and bequest under the statute of wills;" and "also by alienation *inter vivos.*"

From the death of Noah Zane when the right of re-entry passed to his then heirs and through a successive chain of such heirs until the occurrence of the contingency, it has descended, in accordance with the statute of descent and distribution, which from time to time consisted of the early Virginia statutes of 1785, 12 HENING's STATUTES AT LARGE, Chapter LX, Sections I and II, and the Virginia Code, 1849, Chapter CXXIII, Section 1, and the present statute of

this State, Section 1, Article 1, Chapter 42, Code, 1931, as amended. Those Virginia statutes contained provisions substantially the same as the pertinent provision of the present statute that "When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to his kindred, male and female, in the following course: (a) To his children and their descendants." Those statutes have governed the descent of the right of re-entry from Noah Zane to his heirs at the time of his death and from them to his present heirs. The heirs of Noah Zane at the time of his death, to whom the right of re-entry then descended, being his two children and of the same class, took such right of entry per capita or by persons and such taking is not inconsistent with the provisions of the early Virginia statutes of 1785, 12 HENING's STATUTES AT LARGE, Chapter LX, Section XIV, and the Code of Virginia, 1849, Chapter CXXIII, Section 3, and the provisions of the present statute of this State, Section 3, Article 1, Chapter 42, Code, 1931, as amended, which are substantially similar. The contention that the appellants, as living members of the class, took the right of re-entry per capita and the descendants of the dead members of the class took per stirpes the share of their deceased ancestor is devoid of merit for the reason that the right of re-entry did not descend to the heirs of Noah Zane when the right of re-entry accrued upon the breach of condition in 1964, but instead descended to the heirs of Noah Zane at the time of his death who were his children Carolina Z. Shriver and Platoff Zane, each of whom took an equal one-half per capita, which descended from them by the statute of descent and distribution to their heirs and so on from time to time to the defendants in this case, who are the present heirs of Noah Zane.

The case of *Overton v. Heckathorn*, 81 W.Va. 640, 95 S.E. 82, cited and relied upon by the appellants does not support their position that the right of re-entry descended to the heirs of the intestate ancestor when the right of entry accrues and not at the time of the death of the ancestor, and is not in conflict with the decision in this case. In that case the intestate ancestor, instead of leaving children as his heirs

at the time of his death, as was the case with Noah Zane, left as his immediate heirs at the time of his death only nieces and nephews and grand nieces and nephews, who were collateral relations of the whole blood, and his estate was divided into a number of shares equal to the whole number of nieces and nephews living and represented by the issue of those who were dead and one of such shares went to each of those who were living and one of such shares went to each class of the descendants of those who were dead for equal division among the members of such class. Otherwise stated the living nieces and nephews took per capita and the descendants of those who were dead took the shares of their ancestor per stirpes, in accordance with the provisions of Section 3, Article 1, Chapter 42, Code, 1931, as amended. Likewise, as already indicated, the right of re-entry retained in the deed by Noah Zane descended to Carolina Z. Shriver and Platoff Zane per capita as his heirs at the time of his death. Ordinarily the heirs of an ancestor are to be determined as of the time of his death. *Lane v. The Board of Education of Lincoln County*, 147 W.Va. 737, 131 S.E.2d 165; *Young v. Lewis*, 138 W.Va. 425, 76 S.E.2d 276; *Kennedy v. Kennedy*, 97 W.Va. 491, 125 S.E. 337; *Sehon v. Bloomer*, 72 W.Va. 316, 78 S.E. 105; *Tomlinson v. Nickell*, 24 W.Va. 148. The case of *Williams v. Knowles*, 178 Va. 84, 16 S.E.2d 316, also cited by the appellants, is distinguishable from the case at bar.

The appellants refer to the dissenting opinion of Judge Brannon in *White v. Bailey*, 65 W.Va. 573, 64 S.E. 1019. Though by using a quotation from BALLARD ON REAL PROPERTY that a right of re-entry "descends to the grantor's heirs," Judge Brannon considered the right of re-entry to be inheritable, nevertheless, by following the minority rule of the cited New York cases, including *Upington v. Corrigan*, 151 N.Y. 143, 45 N.E. 359, 37 L.R.A. 794, he reached the conclusion that the provision of our then statute Section 5, Chapter 71, Code, 1868, that "Any interest in or claim to real estate may be disposed of by deed or will," did not apply to a right of re-entry "because it requires some estate or actual interest for the foundation of a claim to come under

that statute." This Court concurs in the comment in the report of the commissioner in this case that "Although Judge Brannon states that a right of re-entry was inheritable at common law, he nevertheless avoids the effects of our statute of descent by reliance upon those New York cases."

The judgment of the Circuit Court of Ohio County is affirmed.

*Affirmed.*