# Staunton

## KATE B. WILLIAMS, ET ALS. v. JENNIE B. KNOWLES, ET ALS.

September 10, 1941.

Record No. 2401.

Present, All the Justices.

The opinion states the case.

*Thomas I. Talley* and *Donald D. Williams,* for the appellants.

*George E. Allen,* for the appellees.

Holt, J., delivered the opinion of the court.

At the first March rules, 1940, came Kate B. Williams, Allie F. Baird, Daniel W. Baird and Marion B. Magee, by counsel, and filed their bill of complaint against Jennie B. Knowles, Walter J. Gill, William F. Gill, Lillie May Baird, Lottie B. Snead, Henry W. McCance, and Virginia L. McCance, the last named defendant being an infant under the age of twenty-one years, which bill of complaint contains the following allegations:

"1. That Bessie Gill during her lifetime resided in the city of Richmond, Virginia, and died unmarried, intestate and without issue, on the ...... day of April, 1938, and was not survived by either of her parents, or by any brothers or sisters or their descendants, or by her grandfather or grandmother, but left as her next of kin and only heirs at law the following named persons:

"Jennie B. Knowles,     the only child of Margaret Baird Jones, who was the only sister of Charlotte Baird Gill, the mother of said Bessie Gill, the said Margaret Baird Jones and Charlotte Baird Gill as well as their husbands

having pre-deceased the said Bessie Gill.

"Lillie May Baird,
"Lottie Snead,
"Kate B. Williams,
"Daniel W. Baird,
"Marion B. Magee, and
"Allie F. Baird, the only children of James S. Baird, who was the only brother of said Charlotte Baird Gill,

"William P. Gill, and
"Walter J. Gill, the only children of Joseph Horace Gill, a brother of Walter S. Gill, who was the father of said Bessie Gill.

"Henry W. McCance and
"Virginia L. McCance, the only children of Henry M. McCance, who was the only child of Emily Gill McCance, the only sister of said Walter S. Gill. The only other brother of said Walter S. Gill was Henry Gill, who pre-deceased the said Bessie Gill, unmarried and without issue.

"2.. That the said Bessie Gill was the only child of Walter S. Gill and Charlotte Baird Gill, both of whom predeceased her; that the said Charlotte Baird Gill had only one sister, Margaret Baird Jones, and one brother, James S. Baird, both of whom predeceased the said Bessie Gill; that the said Walter S. Gill had only one sister, Emily Gill McCance and two brothers, Joseph Horace Gill and Henry Gill, all of whom predeceased the said

Bessie Gill; that the said Emily Gill McCance had one child, Henry M. McCance, who predeceased the said Bessie Gill and was survived by only two children, the defendants, Henry W. McCance and Virginia L. McCance; that the said Joseph Horace Gill predeceased the said Bessie Gill and was survived by only two children, the defendants, William P. Gill and Walter J. Gill; that the said Henry Gill predeceased the said Bessie Gill, unmarried and without issue.

"3. Your complainants, therefore, allege that the said parties named in paragraph 1 of this bill are the only persons who have any right, title and interest in and to the real estate of which the said Bessie Gill died seized and possessed."

On May 9, 1940, the defendants, Jennie B. Knowles and Henry W. McCance, in their joint and separate answer said:

"(1) That the allegations contained in paragraph one of said bill of complaint are true, according to the best information available to these respondents.

"(2) That the allegations contained in paragraph two of said bill of complaint are true according to the best information available to these respondents."

On the same day Lottie B. Snead filed her answer to said bill, which reads, in part, as follows:

"This defendant for answer to said bill, or to so much thereof as she is advised that it is material and proper that she should answer does answer and say that the allegations made in said bill are true and correct and that she concurs in the prayer of the complainants and recommends that the court make sale of the property described in said bill in order to effect a partition thereof."

This cause was heard by the Honorable Willis D. Miller, Judge of the Law and Equity Court of the City of Richmond, sitting for and at the request of the Honorable Willis C. Pulliam, Judge of the said Hustings Court, Part II, held for the City of Richmond, who referred it to a master commissioner with directions to

ascertain "Who are the heirs-at-law and distributees of Bessie Gill, deceased, and the proportions in which they are entiltled to share in the distribution of said estate, and whether or not they are parties to this suit and properly before the court in this cause," who reported:

"The following are the heirs-at-law and distributees of Bessie Gill, deceased, and the proportions in which they are entitled to share in the distribution of her estate are set opposite their respective names. They are all parties to this suit and are properly before the court in this cause.

| "William P. Gill, | 1/6 | Jennie B. Knowles, | 1/14 |
|---|---|---|---|
| "Walter J. Gill, | 1/6 | Lillie May Baird, | 1/14 |
| "Henry W. McCance, | 1/12 | Lottie B. Snead, | 1/14 |
| "Virginia L. McCance, | 1/12 | Kate B. Williams, | 1/14 |
| | | Daniel W. Baird, | 1/14 |
| | | Marion B. Magee, | 1/14 |
| | | Allie F. Baird, | 1/14 |

"Note: These proportions are allotted, in my opinion, in accordance with Sections 5264 and 5266 of the Code of Virginia."

To this report these complainants filed this exception:

"The complainants, Kate B. Williams, Allie F. Baird, Daniel W. Baird, Marion B. Magee, and Lillie May Baird, and the defendant, Lottie B. Snead, except to the report of Charles U. Williams, Jr., Special Commissioner in Chancery, filed in this cause on the 28th day of June, 1940, insofar as it reports on the proportions in which the heirs-at-law and distributees of the deceased are entitled to share in the distribution of the estate:

"1. Because the report of said Commissioner puts a wrong interpretation upon Sections 5264 and 5266 of the Code of Virginia, and holds that one-half of the estate goes to the paternal side and the other one-half to the maternal side of the *deceased'* family, whereas, under a proper interpretation of the said sections all of the par-

ties to this cause are entitled to share equally in the distribution of the estate, with the exception of the McCance children.''

The chancellor overruled this exception and confirmed the report. Afterwards a cash offer of $15,000 was accepted. We are concerned only with the proper distribution of this $15,000.

■ Descent in Virginia is fixed by statute. Provisions with which we are immediately concerned appear in Code, sections 5264 and 5266. Sections 5264 reads:

"*Course of descents generally*:—When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his kindred, male and female, as are not alien enemies, in the following course:

"First. To his children and their descendants.

"Second. If there be no child, nor the descendant of any child, then to his or her father and mother, or the survivor.

"Third. If there be neither father nor mother, then to his or her brothers and sisters, and their descendants.

"Fourth. If none such, then the whole shall go to the surviving consort of the intestate.

"Fifth. If none such, then one moiety shall go to the paternal, the other to the maternal kindred, of the intestate, in the following course:

"Sixth. First to the grandfather and grandmother, or the survivor.

"Seventh. If none, then to the uncles and aunts, and their descendants.

"Eighth. If none such, then to the great grandfathers or great grandfather, and great grandmothers, or great grandmother.

"Ninth. If none then to the bothers and sisters of the grandfathers and grandmothers, and their descendants.

"Tenth. And so one (on), in other cases, without end, passing to the nearest lineal ancestors, and the descendants of such ancestors.

"Eleventh. If there be no paternal kindred the whole shall go to the maternal kindred; and if there be no maternal kindred,.the whole shall go to the paternal kindred. If there be neither maternal nor paternal kindred, the whole shall go to the kindred of the husband or wife, in the like course as if such husband or wife had died entitled to the estate."

Section 5266 reads:

"*When parties take per capita, and when per stirpes.* —Whenever those entitled to partition are all in the same degree of kindred to the intestate, they shall take per capita or by persons; and where, a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take *per stirpes* or by stocks, that is to say, the shares of their deceased parents."

Common law analogies are not helpful. That system, made up of immemorial customs, of statutes worn out by time, of rules borrowed from the civil law of Rome, and of decisions wherein that was held to be law which judges thought should be law, has, as we have seen, been superseded by statute, and with it went *primogeniture* and all its concepts of feudal tenure. These matters, considered at length in *Davis* v. *Rowe,* 6 Rand. (27 Va.) 355, were there, in five opinions, ably and elaborately discussed. To undertake to restate what has been so well stated would be unfruitful.

The trial court was of opinion that this estate should have been divided into moities and so decreed. It is the contention of petitioners that the provisions of Code, section 5266, should have been applied to the estate as a whole just as if all of the kin had been on one side, kin to be traced either through the father or through the mother. It is the contention of the respondents that section 5264, declaring the course of descents, was mandatory upon the court and that section 5266, merely prescribing the mode of distribution, could not be applied until after the provisions of section 5264 had been applied and the estate divided into moieties; and that after

the awarding of one moiety to the paternal kindred and the other moiety to the maternal kindred, the two moieties should be dealt with as separate and distinct estates.

While the statute of descents of 1785 was complete as to the persons who should inherit, its provisions were not so clear as to the proportions in which the estate was to be divided among those entitled to participate. It is remarked by Judge Cabell in *Davis* v. *Rowe, supra,* (p. 470):

"But, although the course of descents of real, and the distribution of personal estate, is rendered thus full, complete and perfect, as to those persons who shall be the distributees of the one, and the heirs of the other, yet it is manifest that the provisions of the act are not equally full, complete and perfect, as to the proportions in which the estate is to be divided among those who are called to its participation. The express provisions of the act, so far as relates to this subject, are far from embracing all the cases which may occur. The only part of the act which expressly relates to this subject, is the 14th section of the act of 1785, answering to the 16th section of our present law. It is in these words: 'And, where the children of the intestate, or his mother, brothers and sisters, or his grandmother, uncles and aunts, or any of his female lineal ancestors living, with the children of his deceased lineal ancestors, male and female in the same decree, come into the partition, they shall take *per capita;* that is to say, by persons; and where, a part of them being dead, and a part living, the issue of those dead have a right to partition, such issue shall take *per stirpes,* or by stocks, that is to say, the shares of their deceased parent.' "

At the same place the judge gives instances as to which there is no provision, one of which was, "where the grandmother, uncles and aunts, are all dead, some of them leaving descendants."

In *Davis* v. *Rowe, supra,* it was held that although the
16th section of the act did not in terms provide for the
case of a brother and sister dying before the intestate
and leaving an unequal number of children, yet the spirit
of that section, taken in connection with the 1st and 4th
sections, justify the construction that such children take
per capita and not per stirpes.

The 16th section of the Revised Code of 1819, in force
in 1828 when *Davis* v. *Rowe, supra,* was decided and iden-
tical with the 14th section of the act of 1785, became, at
the revision of 1849, section 3 of Chapter 123, Code of
1849, but with the addition of the words: "But when-
ever those entitled to partition are all in the same de-
gree of kindred to the intestate, they shall take per
capita, or by persons," thus giving legislative sanction
to the decision in *Davis* v. *Rowe, supra* (Graves' Notes
on Real Property, p. 90; 2 Min. Inst., p. 539). In the
same language this section was reenacted as section 2550
of the Code of 1887 and 5266 of the Code of 1919. For
convenience, it is here quoted at large, the added clause
of the revision of 1849 being italicized:

*"When parties take per stirpes, and when per capita.*
—When the children of the intestate, or his mother,
brothers, and sisters, or his grandmother, uncles, and
aunts, or any of his female lineal ancestors living, with
the children of his deceased lineal ancestors, male and
female, in the same degree, come into the partition, they
shall take per capita or by persons; and where, a part of
them being dead and a part living, the issue of those dead
have right to partition, such issue shall take per stirpes
or by stocks, that is to say, the shares of their deceased
parents; *but whenever those entitled to partition are all
in the same degree of kindred to the intestate, they shall
take per capita or by persons."*

The 5th section of the act of 1785, carried without
change into the revised Code of 1819 (p. 353), into the
Code of 1849 (Chapter 123, section 4), the Code of 1887
(paragraph 4, section 2548), and the Code of 1919 (sec-

tion 5264, as paragraph 4th), declares that ''if there be
no mother, nor brother, nor sister, nor any descendant
of either, then one moiety shall go to the paternal, the
other to the maternal kindred, in the following course;''
that is, as prescribed by paragraphs 5th to 9th, inclusive.

There was no incongruity between that provision and
the 14th paragraph of the original act as amended in
the revision of 1849 (Chapter 123, section 3), for the
addition made by the revisors only made clear what in
*Davis* v. *Rowe, supra,* was held necessarily to be implied,
thus: '' * * * where, a part of them being dead and a
part living, the issue of those dead have right to partition,
such issue shall take *per stirpes,* or by stocks, that is to
say: the shares of their deceased parents; *but whenever
those entitled to partition are all in the same degree of
kindred to the intestate, they shall per capita, or by per-
sons.''*

And so in *Moore* v. *Conner,* 2 Va. Dec. 56, 20 S. E. 936,
where, in order to uphold the contention that certain
nephews and nieces of the half-blood should take per
capita, the appellant attempted to construct a class so
composed by making the clause added by the revisors of
1849 modify and affect also the provision of the statute
with reference to collaterals of the half-blood, another
section of the act, in dismissing this contention, the
court said (p. 64):

''As to the provision from section 2550, which is re-
lied upon, it must be borne in mind that that section em-
braces four distinct classes, to-wit: (1) The children
of the intestate; (2) his mother, brothers, and sisters;
(3) his grandmother, uncles, and aunts; (4) any of his
female lineal ancestors living, etc.,—to which, in case
some of the class are dead, the subsequent provision for
taking per stirpes or per capita applies; and these four
classes are distinctly in unison with and explanatory of
the like number of classes mentioned in the 'course of
descents' prescribed by section 2548 in which the ques-
tion may arise, and are arranged in the same order.

Hence in the course of descents prescribed in section 2548 we have: First, 'to his children and their descendants;' second (clause 3), 'to his mother, brothers, and sisters;' third (clause 6), grandmother, uncles, and aunts; fourth, other cases, respecting the division of moieties under the subsequent clauses of the section. In none of the intervening cases can the question of taking per stirpes arise. * * * The other divisions are but explanatory of how the estate shall be partitioned under the proper class 'when discovered, especially when some of those entitled to take are descendants of deceased members of the class, or some of the class are collaterals of the half-blood. Having thus determined the class, no number of deaths in it, short of its total extinction, will affect the interest of any survivor of that class.''

Judge Carr, one of the majority in *Davis* v. *Rowe, supra,* discussing section 16 of the act as it appeared in the Revised Code of 1819, said (6 Rand. (27 Va.) 365):

''This is the second rule of which I spoke, and I understand it thus broadly: *'That wherever several persons succeed to the inheritance at the same time* (Italics supplied), if they are all related to the intestate in equal degree, they shall take by persons; but if part of them be more remote, those shall take the shares of their deceased parent.' If it be objected, that the words of the 16th section do not justify the deduction of a rule so general as this, but one restricted to the cases there mentioned, I answer that the cases put are those *quae frequentius accidunt,* that nothing is more common than for statutes to put such cases as examples of a general rule, it being impossible for the Law to enumerate every case, and that here we must give such extension to the rule, or violate the whole scheme and reason of the Statute. But take it, that the rule of the sixteenth section extends to those cases only which are there put, it by no means follows, that the Act is defective, and a resort to another system proper. No! the first rule comprehends and governs every case not within the second.''

It has been stated that section 5266 of the Code of 1919 is identical with section 3 of Chapter 123, of the Code of 1849, which in turn was the sixteenth section of the act referred to by Judge Carr, amended at that revision to carry into the statute the doctrine of *Davis* v. *Rowe, supra.* The revisors of the Code of 1919 in their note to section 5266, using in substance the language of Judge Carr, said:

"This statute may be paraphrased: *If the heirs* (italics supplied) are all in the same degree of relationship· to the decedent, they take per capita, or by persons (equally); if in unequal degree, the nearest take per capita while the more remote take *per stirpes* the share of their decedent ancestors who are in the degree of the nearest. *Davis* v. *Rowe,* 6 Rand. (27 Va.) 355; *Ball* v. *Ball,* 27 Gratt. 325; 21 Min. 4th Ed. 543."

By an act approved March 28, 1922 (Acts of Assembly 1922, p. 861), the General Assembly amended the statute of descents (Code of 1919, section 5264) but repeated the provision that if there were none of the classes specified in preceding paragraphs, one moiety of. the estate should go to the paternal, the other to the maternal kindred of the intestate, stating courses for the devolution of these moities, now for the first time differing from those specified in the act of 1785. By an act approved March 29, 1923 (Acts of Assembly, Extra Session, 1923, p. 166), the Legislature again amended section 5264 of the Code, leaving untouched, however, the provision referred to, that in the absence of certain kindred theretofore specified one moiety shall go to the paternal, the other to the maternal kindred of the intestate, and, as a part of the same act, amended and reenacted. section 5266 of the Code. This latter portion of the act entirely eliminated the part of section 5266 of the Code of 1919, which specified certain classes of descendants to whom was applicable the clause added in the provision of 1849; namely, "but whenever those entitled to partition are all in the same degree of kindred to the intestate, they shall

take per capita or by persons,'' the substituted section being itself a paraphrase of the revisors' note to section 5266 of the Code of 1919, thus:

"Section 5266: *When parties take per capita, and when per stirpes.*—Whenever those entitled to partition are all in the same degree of kindred to the intestate, they shall take per capita or by persons; and where, a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take *per stirpes* or by stocks, that is to say, the shares of their deceased parents.''

It is to be observed that the various paragraphs of section 5264, as amended in 1923, determined, first, the inheritance, the subject of partition, and, second, the persons who succeed to the inheritance. The statute to and including its fourth paragraph deals with the entire realty of the intestate; from the fifth to the tenth paragraphs, inclusive, it deals with the estate divided into moieties, devoting one to the paternal kindred, the other to the maternal kindred. The eleventh paragraph again deals with the entire estate. The inheritance, whether the entire lands or a moiety of them, being determined by the presence or absence of representatives of a class, the persons who succeed to the inheritance next are fixed; in some cases the class named inherits the entire estate, in othr instances, the classes named, being the paternal kindred or the maternal kindred, inherit each a moiety of the estate and no more.

To inherit the whole estate, those several classes succeed who are specified in paragraphs first, second, third, fourth and eleventh; to inherit a moiety only of the estate, those classes of paternal kindred and of maternal kindred respectively succeed who are specified in paragraphs sixth, seventh, eighth, ninth and tenth. If there be both maternal and paternal kindred who succeed to the inheritance, neither line under any circumstance succeeds to an inheritance greater or less than one moiety of the estate.

The language of section 5266, "whenever those entitled to partition are all in the same degree of kindred to the intestate," is the precise equivalent of Judge Carr's expression, *supra*, "whenever several persons succeed to the inheritance at the same time," and of the term used in their note by the revisors of 1919, "the heirs," and in such case, if they are "all in the same degree of kindred," or as Judge Carr puts it, "related to the intestate in equal degree," they shall take per capita or by persons the subject of partition, whether it be the entire estate or that moiety of the estate to which the paternal kindred succeed or to which the maternal kindred succeed.

Nothing in section 5266 favors the construction that it deals with the subject of partition, the inheritance, which is fixed by the provisions of section 5264, to be either the whole or a moiety of the estate; the statute refers to and deals with the shares in the subject inherited of the various persons succeeding thereto, with relation to one another, whether the subject inherited be the whole or a moiety of the estate.

Sections 5264 and 5266 of the Code as they now appear were amended and reenacted as parts of a single statute. If section 5266 can be construed to refer to the inheritance, the subject of partition, instead of solely to those who succeed to the inheritance and are entitled to partition, the result would be a fatal repugnancy, the entire negation of paragraph 5 of the statute of descents in every case where the members of two separate classes, paternal and maternal kindred, happen to be unequal in number and of the same degree of kinship to the intestate. For there descends to paternal kindred under the fifth paragraph of the statute only one moiety and to maternal kindred only the remaining half, but if, for example, all such kindred happen to be first cousins of the intestate, one a descendant of the brother of the intestate's deceased father, five the descendants of the brother of the intestate's deceased mother, under this construction the paternal kindred succeeds to one-sixth in-

stead of one moiety, the maternal kindred to five-sixths of the entire estate, instead of the other moiety; and the subject of inheritance in every instance of collateral kindred is determined not by the fifth paragraph of section 5264 but by the provision of section 5266.

In the instant case, the moiety which descended to the paternal kin is divided into three parts; the one-third of that moiety which would have gone to Henry McCance, dead before Bessie McGill, goes by stock to his two children. The moiety which descended to the maternal kin passes to seven heirs who, being equally of kin, take in equal proportions, as will be seen by a plat showing kinship.

"The decision into moieties between the paternal and maternal lines take place when there is no father or mother, no brother or sister, nor the descendants of any of them. But after the division is once made at this point, each moiety goes to the proper kindred *as a class,* on the paternal and maternal side respectively, and there is no further division into moieties as between the branches of paternal and maternal kindred. And each moiety keeps on its own side, regardless of the other, so long as there are *any* kindred, however remote, on that side." Graves' Notes on Real Property, p. 88.

Statutes are construed to be repugnant to each other only when such a conclusion is inescapable; we harmonize them when we can.

Code, section 5266, was not intended to supersede paragraph "Fifth" of section 5264 but to supplement it. Whenever, in tracing descent, designated conditions prevail, an estate must be divided into moieties, and to each of these moieties then attaches the provisions of section 5266. These conditions attach to each moiety as a separate entity but not to the estate theretofore divided as a single unit, and this, of course, may sometimes result in an inequality of inheritance by those who are in fact of the same degree of kinship.

The decree appealed from is affirmed.

*Affirmed.*