## CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of
Gladys Floyd,
deceased

August 5, 2009

Case Nos. CL-2007-13325; FI-2007-1652

BY JUDGE ROBERT J. SMITH

This matter came before the Court on the Petition for Aid and Direction filed by Kenneth Labowitz as the Administrator of the Estate of Gladys Floyd, deceased. The petition seeks the approval of a plan of distribution for the proceeds of the Estate of Gladys Floyd, who died intestate on September 18, 2007.

This case presents the question of how proceeds from an estate are to be distributed pursuant to Virginia's intestacy statute amongst two maternal first cousins, three maternal first cousins once removed, a paternal first cousin, eight paternal first cousins once removed, and seven paternal cousins twice removed.

While this Court is unaware of any cases that deal with this particularly removed arrangement of distribution, the course of descent provides an analytical structure for cases where an intestate's closest lineal ancestors are even more remote in terms of consanguinity. While not novel in its approach, this case and all such cases warrant particular attention to connect a particular relation with his or her share of an estate.

### The Course of Descents

The system of descent with respect to intestate succession at common law is discussed fully in 2 W. Blackstone, *Commentaries on the Laws of England*, c. 14 (Fac. Ed. 1979), and stems from the feudal system. However, it is within the purview of the legislature to alter and change the course of

descents. *McFadden v. McNorton*, 193 Va. 455, 69 S.E.2d 445 (1952). It was recognized by the Supreme Court of Virginia as early as 1781, *Tomlinson v. Dillard*, 7 Va. (3 Call) 105 (1781), and reaffirmed in 1828 that the "Cardinal Canons of the Common Law of Descents were expressly abrogated by [the Act of Descents of 1785, re-enacted at the Revisals of 1792 and 1819], as inconsistent with, and repugnant to, [republican] institutions." *Davis v. Rowe*, 27 Va. (6 Rand.) 355, 435 (1828) (*determining* whether common law principles of descent applied to intestate distribution amongst nephews and nieces, and grand-nephews, and grand-nieces of the decedent because such relations were not provided for in the intestacy statute); *see also Browne v. Turberville*, 6 Va. (2 Call) 390 (1800); *Templeman v. Steptoe*, 15 Va. (1 Munf.) 339 (1810).

The Commonwealth of Virginia has changed the course of descents several times and the statute in force at the time an intestate dies controls the course by which the estate shall descend. *Dilliard v. Tomlinson*, 15 Va. (1 Munf.) 183 (1810); *Hauenstein v. Lynham*, 69 Va. (28 Gratt.) 62 (1877); *see generally Ball v. Ball*, 33 Va. Cir. 525, 526 (Clarke County 1984) (*providing* a legislative history on the incorporation and advancement of a surviving spouse within the course of descents). The Virginia General Assembly codified the most recent rendition of intestate succession in 1990. The Code reads as follows:

> *Course of Descents Generally.* When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his kindred, male and female, in the following course:
>
> First. To the surviving spouse of the intestate, unless the intestate is survived by children or their descendants, one or more of whom are not children or their descendants of the surviving spouse, in which case two-thirds of such estate shall pass to all the intestate's children and their descendants and the remaining one-third of such estate shall pass to the intestate's surviving spouse.
>
> Second. If there be no surviving spouse, then the whole shall go to all the intestate's children and their descendants.
>
> Third. If there be none such, then to his or her father and mother or the survivor.
>
> Fourth. If there be none such, then to his or her brothers and sisters, and their descendants.

Fifth. If there be none such, then one moiety shall go to the paternal, the other to the maternal kindred, of the intestate, in the following course:

Sixth. First to the grandfather and grandmother or the survivor.

Seventh. If there be none, then to the uncles and aunts, and their descendants.

Eighth. If there be none · such, then to the great grandfathers or great grandfather, and great grandmothers or great grandmother.

Ninth. If there be none, then to the brothers and sisters of the grandfathers and grandmothers, and their descendants.

Tenth. And so on, in other cases, without end, passing to the nearest lineal ancestors, and the descendants of such ancestors.

Eleventh. If there be no paternal kindred the whole shall go to the maternal kindred; and if there be no maternal kindred, the whole shall go to the paternal kindred. If there be neither maternal nor paternal kindred, the whole shall go to the kindred of the husband or wife, in the like course as if such husband or wife had died entitled to the estate.

Va. Code Ann. § 64.1-1 (1990).

It is this iteration of the course of descents that controls the case at bar.

### Distribution of the Estate of Gladys Floyd

The closest relatives to survive Gladys Floyd upon her death were cousins on both her mother's and father's sides of the family. Therefore, this Court's analysis begins with the fifth point of the statute. The legislature clearly stipulated that the estate is to be divided into two equal moieties. *See Williams v. Knowles,* 178 Va. 84, 16 S.E.2d 316 (1941) (*construing* the point "Fifth. If none such, then one moiety shall go to the paternal, the other to the maternal kindred, of the intestate, in the following course. . . ." contained within the Code of Virginia § 5264 of 1936, to mean that the estate must be divided into two moieties, and that after such division, the two moieties should be dealt with as separate and distinct estates). Thus, one half of the estate is to be split amongst the maternal "kindred" and the other half of the estate is to be split amongst the paternal "kindred."

*Distribution of the Maternal Moiety*

The maternal moiety is easier to deal with as the decedent's maternal grandparents had three children, of which only one line of descendants from those children survived the decedent. This brings us to the seventh point within the statute: "If there be none, then to the uncles and aunts, and their descendants." Va. Code Ann. § 64.1-1 (1990).

Decedent's Uncle Charles Brooks was married to her Aunt Ora Cardwell. They had five children: Geraldine Brooks Boden (survived); Beatrice Brooks (survived), Elvaline Brooks (deceased without children); Mabel Eleanor Brooks Downey (deceased and survived by two children: Kenneth Edward Downey and Edward Andrew Downey); and Dwayne Charles Brooks (deceased and survived by one child: Gayle Irene Brooks).

The General Assembly stipulated, when parties are to take *per capita* and when they are to take *per stirpes*: "Whenever those entitled to partition are all in the same degree of kindred to the intestate, they shall take *per capita* or by persons; and when, a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take *per stirpes* or by stocks, that is to say, the shares of their deceased parents." Va. Code Ann. § 64.1-3 (1960). There being four surviving lines of maternal first cousins, each line is to take 1/4 of the maternal moiety, such that each receives the equivalent of 1/8 of the overall estate. Thus, maternal first cousin Geraldine Brooks Boden and maternal first cousin Beatrice Brooks each receive 1/8 of the estate.

Maternal first cousin Mabel Eleanor Brooks Downey was entitled to 1/4 of the maternal moiety as well. Her children, Kenneth Edward Downey and Edward Andrew Downey are both first cousins once removed of the intestate and thereby take by stocks an equal share of the entitlement of their deceased mother. Thus, Kenneth Edward Downey and Edward Andrew Downey are each entitled to 1/8 of the maternal moiety, such that each is entitled to the equivalent of 1/16 of the overall estate.

Maternal first cousin Dwayne Charles Brooks also was entitled to 1/4 of the maternal moiety. His child, Gayle Irene Brooks, the first cousin once removed of the decedent, takes his father's share *per stirpes*. Therefore, Gayle Irene Brooks is entitled to 1/4 of the maternal moiety, a portion equivalent to 1/8 of the entire estate.

*Distribution of the Paternal Moiety*

The decedent's paternal grandparents had eleven children, of which only two lines of descendants of those children are known to have survived. Decedent's Aunt Lillian Schauland had four children, each of which either survived or had a line of descendants that survived the decedent. Aunt Emma Hurst had six children, of which only three were determined to have a line of descendants that survived the decedent.

The first living relative on the paternal side is the daughter of Lillian Schauland, first cousin Phyllis Clara Schauland. Therefore, pursuant to Va. Code § 64.1-3, all paternal first cousins shall take *per capita* and their descendants *per stirpes*. There being seven lines of paternal first cousins to survive the decedent, each surviving first cousin or the line of each cousin's descendants is entitled to 1/7 of the paternal moiety, equivalent to 1/14 of the overall estate.

*Distribution of Each Paternal First Cousin's*
*per capita Share of the Paternal Moiety*

Decedent's Aunt Lillian Schauland's four children were Phyllis Clara Schauland (survived), Floyd Schauland (deceased), Walter Schauland (deceased with three children), and Melvin Schauland (deceased with three children). The children of decedent's Aunt Emma Hurst, who had lines of descendants that survived decedent, are John Hurst (deceased with one child), Erle Hurst (deceased with two children), and Lorraine Hennings (deceased with two children).

A. *Paternal First Cousin Phyllis Clara Schauland's Share*

Phyllis Clara Schauland takes a *per capita* share of the paternal moiety with the other surviving lines of paternal first cousins. She is entitled to 1/7 of the paternal moiety, a portion equivalent to 1/14 of the entire estate.

B. *Paternal First Cousin Floyd Schauland's Share*

Floyd Schauland had one daughter, Karen Dempsey. Karen Dempsey was decedent's first cousin once removed, and she predeceased the decedent. Karen Dempsey had one daughter, Jane Ann Dempsy Gramlich. Jane Ann Dempsy Gramlich is decedent's first cousin twice removed, and she is entitled to Floyd Schauland's 1/7 of the paternal moiety, a portion equivalent to 1/14 of the entire estate.

## C. *Paternal First Cousin Walter Shauland's Share*

Walter Schauland died in 1964 and was survived by his three children Mary Caryl Sarcletti, Linda Schauland Cantu, and Mark Walter Schauland. His children take his share by stocks. Each of them would be entitled to 1/3 of Walter Schauland's 1/7 of the paternal moiety. However, Mary Caryl Sarcletti died in 1980 and was survived by her two children: Robert Sarcletti and Lissa Sarcletti Brown. Each of Mary Caryl Sarcletti's children takes an equal part of her share *per stirpes*. Thus, the decedent's first cousin once removed Linda Schauland Cantu and first cousin once removed Mark Walter Schauland each take 1/21 of the paternal moiety, each portion equivalent to 1/42 of the estate. The decedent's first cousin twice removed Robert Sarcletti and first cousin twice removed Lissa Sarcletti Brown each take 1/42 of the paternal moiety, each portion equivalent to 1/84 of the overall estate.

## D. *Paternal First Cousin Melvin Schauland's Share*

Melvin Schauland died in 1973. He had three children: Shirley Schauland Craig, Dale William Schauland, and Melvin Schauland. The younger Melvin Schauland predeceased his father and did not have any children. Each of the elder Melvin Schauland's other two children is still living and is entitled to an equal portion of their father's share *per stirpes*. Therefore, the decedent's first cousin once removed Shirley Schauland Craig and first cousin once removed Dale William Schauland are each entitled to 1/14 of the paternal moiety, each portion equivalent to 1/28 of the overall estate.

## E. *Paternal First Cousin John Hurst's Share*

John Hurst died in 1952 and had one child, Jean Marie Hurst Smith. Jean Marie Hurst Smith is entitled to John Hurst's 1/7 share of the paternal moiety. However, Jean Marie Hurst Smith died in April 2009. As a result, the estate of Jean Marie Hurst Smith is entitled to 1/7 of the paternal moiety, a portion equivalent to 1/14 of the estate of Gladys Floyd.

## F. *Paternal First Cousin Erle Hurst's Share*

Erle Hurst died in 1958 and was succeeded by his two children: Joanne Hurst Saxon and Edward Erle Hurst. Each of them is entitled to an equal portion or their father's share by stocks. Therefore, decedent's first cousin

once removed Joanne Hurst Saxon receives 1/14 of the paternal moiety and first cousin once removed Edward Erle Hurst receives 1/14 of the paternal moiety. In other words, each is to receive 1/28 of the estate.

G. *Paternal First Cousin Lorraine Hennings's Share*

Lorraine Hennings predeceased decedent and had two surviving children: Judith Ann Hennings Cole and William Hennings. William Hennings also predeceased decedent. He was survived by four children who survived the decedent: Robert Allen Hennings, John William Hennings, Nancy Diane Hennings Brody, and Randall Thomas Hennings. The decedent's first cousin once removed Judith Ann Hennings takes her father's share *per stirpes* to be shared equally with the descendants of her brother William Hennings. Judith Ann Hennings Cole is therefore entitled to 1/14 of the paternal moiety, a portion equivalent to 1/28 of the estate. Each of William Hennings's children takes an equal portion of his 1/14 of the paternal moiety by stocks. Therefore, each of these first cousins twice removed is entitled to 1/56 of the paternal moiety, each portion equivalent to 1/112 of the decedent's estate.

*Conclusion*

The original plan of distribution contained in the proposed orders presented to the Court did not adequately reflect the appropriate proportions of distributions of the estate to which each heir is entitled. My law clerk has prepared an order that distributes the estate according to both the percentage of the maternal or paternal moiety and percentage of the overall estate that each relation shall receive. The Order shall be entered in conjunction with this letter opinion.