Present:  All the Justices

JASON H. SHEPPARD, JR.

                                          OPINION BY
v.    Record No. 130971      JUSTICE LEROY F. MILLETTE, JR.
                                          April 17, 2014
LINDA JUNES, ADMINISTRATOR OF
THE ESTATE OF JOHN WARREN SHEPPERD


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    William T. Newman, Jr., Judge

     In this appeal we consider the impact of a half-blood

relative on the distribution of the paternal side of an

intestate estate when all of the heirs are collaterals[1] and the

estate must be separated into paternal and maternal parts.

                    I.    Facts and Proceedings

     John Warren Shepperd died without having executed a will.

In life, John never married and had no children.  At the time

of his death, John's parents and older sister had predeceased

him.  John's older sister had no children.

     Linda Junes was appointed administrator of John's estate.

Linda identified fourteen second cousins from John's maternal

side, including Linda herself, who survived John's death.

These fourteen second cousins stand in equal relation to John,

and they do not dispute that, among themselves, they are

_____

     [1] A "collateral heir" is "[o]ne who is neither a direct
descendant nor an ancestor of the decedent, but whose kinship
is through a collateral line, such as a brother, sister, uncle,
aunt, nephew, niece, or cousin."  Black's Law Dictionary 791
(9th ed. 2009).

entitled to equal 1/14 shares of whatever interest they collectively have in John's estate. After certification by a genealogical research firm, Linda also accepted Jason H. Sheppard, Jr., as John's half-uncle from John's paternal side who survived John's death.

Linda, in her capacity as administrator, filed a motion for aid and direction in the Circuit Court of Arlington County. Linda sought judicial assistance to determine the proper distribution proportions of John's estate according to Virginia's statutory scheme governing intestate succession because Jason's half-blood status complicated the task. In particular, Linda sought assistance to determine whether either (1) Jason could take the entirety of John's estate that was to pass to John's paternal side, because Jason was the only relative on John's paternal side, or (2) Jason could only take one-half of John's estate that was to pass to John's paternal side, and the remainder was to be distributed to the fourteen second cousins, because half-bloods can only take half of the inheritance of whole-bloods.

After a hearing on the issue, the circuit court held that, because of Jason's half-blood status, Jason could only take a one-half share of John's estate that was to pass to John's paternal side, and the remainder of John's entire estate was to go to the fourteen maternal second cousins. The court then

entered a final order memorializing that ruling, citing Code

§§ 64.2-202(B) and 64.2-203(B) in support of its decision.

Jason timely filed a petition for appeal with this Court.

We granted two assignments of error:

> 1. The trial court erred when it held that the sole collateral heir on the paternal side of an intestate estate is limited to only one-half of the paternal share because he is a half-blood relative of the decedent, and that the other half of the paternal share shall be distributed to all other heirs on the maternal side.

> 2. The trial court erred when it applied Virginia Code Section 64.2-203(B), which prohibits "double inheritance" by an heir who is related to the decedent on both the maternal and paternal side, to a situation where a half-blood heir is only related to the decedent on the paternal side.

## II. Discussion

### A. Standard of Review

This appeal requires us to construe statutory language. That task requires a de novo review because it involves a purely legal issue. L.F. v. Breit, 285 Va. 163, 176, 736 S.E.2d 711, 718 (2013).

### B. Virginia Law Governing Intestate Succession

Well established principles guide our analysis. We construe statutes to "ascertain and give effect to the intention" of the General Assembly. Rutter v. Oakwood Living Ctrs. of Va., Inc., 282 Va. 4, 9, 710 S.E.2d 460, 462 (2011) (internal quotation marks omitted). Typically, this only

3

requires applying the plain meaning of the words used in the statute because the General Assembly's intent "is usually self-evident from the statutory language." Id. (internal quotation marks omitted); see also Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925-26 (2006). However, we look beyond the words of the statute to help ascertain what those words mean if the statutory language is ambiguous. Virginia Broad. Corp. v. Commonwealth, 286 Va. 239, 249, 749 S.E.2d 313, 318 (2013). Also, we construe the statute's plain language in a manner that avoids absurdity. See Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004).

Further, "we do not read statutes in isolation." L.F., 285 Va. at 180, 736 S.E.2d at 720. Thus, we must consider "a statute in its entirety, rather than by isolating particular words or phrases." Small v. Fannie Mae, 286 Va. 119, 127, 747 S.E.2d 817, 821 (2013) (internal quotation marks omitted). Similarly, "statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished." Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (internal quotation marks omitted).

1. Code § 64.2-200

We start with Code § 64.2-200(A), which states: "The real estate of any decedent not effectively disposed of by will descends and passes by intestate succession in the following

4

course." If a decedent fails to effectively dispose of his personal estate by will, the decedent's personal estate, "after payment of funeral expenses, charges of administration, and debts, and subject to the provisions of Article 2 . . . of Chapter 3," is distributed in the same manner as set forth in Code § 64.2-200. Code § 64.2-201(A). Code § 64.2-200 therefore governs to whom a decedent's estate passes if that decedent failed to execute a will and therefore died intestate.

Code § 64.2-200 provides a sequential list of hierarchical classes of people to whom the decedent's estate may pass, set up by the General Assembly in descending priority. Each class on the list is defined by that class's relationship with the decedent, and the further down the list one goes the more distant the relation becomes. It is clear from the sequential nature of Code § 64.2-200's plain language that each subsection of that statute must be assessed in the order listed. Only if a subsection does not apply because no person qualifies as a member of that particular class may the next subsection be considered.

Accordingly, because John had no surviving spouse, no children, no surviving parents, and neither a surviving brother or sister nor a brother or sister who had descendants, the first subsection of the statute applicable to John's estate is Code § 64.2-200(A)(5).

The preamble to Code § 64.2-200(A)(5) states that "[i]f there is none of the foregoing, then one-half of the estate descends and passes to the paternal kindred and one-half descends and passes to the maternal kindred of the decedent in the following course."  When a decedent's estate is separated in this manner, each separate portion of the estate is commonly referred to as a "moiety."  See Black's Law Dictionary 1096 (9th ed. 2009).  We have previously explained, in the context of the predecessor to Code § 64.2-200(A)(5), what effect this separation has on the distribution of a decedent's estate:

> [After a decedent's estate is separated into moieties], each moiety goes to the proper kindred as a class, on the paternal and maternal side respectively, and there is no further division into moieties as between the branches of paternal and maternal kindred.  And each moiety keeps on its own side, regardless of the other, so long as there are any kindred, however remote, on that side.

Williams v. Knowles, 178 Va. 84, 99, 16 S.E.2d 316, 322 (1941) (internal quotation marks and citation omitted) (emphasis omitted).

Given that Code § 64.2-200(A)(5) applies in this case, John's estate must be divided into two different, but equally valued, moieties.  One moiety passes to John's paternal kindred and the other moiety passes to John's maternal kindred.  These moieties are treated as entirely separate so long as each

6

passes to statutorily-identified kindred.  See Code § 64.2-200(B); Williams, 178 Va. at 99, 16 S.E.2d at 322-23.

We now turn to the subsections of Code § 64.2-200(A)(5), and address those subsections in sequential order.  For each moiety, the statutory provisions in Code § 64.2-200(A)(5)(a) through (e) are applied separately and independently.  See, e.g., Williams, 178 Va. at 99, 16 S.E.2d at 322-23.

John's paternal side moiety does not pass under Code § 64.2-200(A)(5)(a) because John had no surviving grandparent on his paternal side.  Code § 64.2-200(A)(5)(b) states that "[i]f there is none of the foregoing, then to the decedent's uncles and aunts, and their descendants."  Jason was an uncle on John's paternal side, and therefore John's paternal side moiety passes to Jason pursuant to Code § 64.2-200(A)(5)(b).

Linda sought judicial aid and direction only for the proper distribution of John's paternal side moiety.  Thus, we would typically not address to what class John's maternal side moiety passes.  However, Code § 64.2-200 requires a determination as to how John's maternal side moiety passes because if no maternal side kindred survived John's death, the moieties are rejoined and treated once again as a single estate.  See Code § 64.2-200(B); Williams, 178 Va. at 99, 16 S.E.2d at 322-23.  Neither moiety would independently exist if

7

the moieties are rejoined, and instead the entire estate would pass according to the terms of Code § 64.2-200(B) or (C).

For this limited purpose, we recognize that fourteen maternal second cousins survived John's death.  The record is unclear how these fourteen second cousins are related to John.  These second cousins may be descendants of John's maternal side uncles or aunts, or they may be descendants of the brothers or sisters of John's maternal side grandparents.  For purposes of this appeal, we need not discern how these second cousins are related to John.  Instead, because John had no surviving grandparents or great-grandparents on John's maternal side, we recognize that John's maternal side moiety passes to the fourteen second cousins under Code § 64.2-200(A)(5)(b) or Code § 64.2-200(A)(5)(d).

Thus, Code § 64.2-200(A)(5) requires John's estate to be divided into two separate, equally valued moieties.  Code § 64.2-200(A)(5)(b) establishes that John's paternal side moiety passes to Jason.  Code § 64.2-200(A)(5)(b) or Code § 64.2-200(A)(5)(d) establishes that John's maternal side moiety passes to John's fourteen second cousins.

## 2.   Code § 64.2-202

We now turn to Code § 64.2-202, which governs the distribution of a decedent's estate among all persons who qualify as part of the class to whom the decedent's estate

passes under Code § 64.2-200,[2] and addresses when persons take per capita,[3] when persons take per stirpes,[4] and the treatment of collaterals of the half blood.  In particular, under Code § 64.2-202(A) the decedent's estate must be divided into equal shares based on the number of "heirs and distributees" who qualify as part of the relevant class, so long as such persons either survive the decedent's death, or, if they did not survive the decedent's death, such persons left descendants who did survive the decedent's death.  Once the number of shares is calculated, one share is distributed to each "such heir and distributee" on a per capita basis and to "such descendants" on a per stirpes basis.  See also Ball v. Ball, 68 Va. (27 Gratt.) 325, 327 (1876) ("Whenever those entitled to partition are in the same degree of kindred to the intestate, they shall take per capita or by persons; and where a part of them being dead and a part living, the issue of those dead shall take per stirpes.").

---

[2] Code § 64.2-202(A) expressly exempts Code § 64.2-200(A)(1) from its distribution scheme because Code § 64.2-200(A)(1) sets forth its own distribution scheme if a decedent's estate passes to a surviving spouse.

[3] "Per capita" means to "[d]ivide[] equally among all individuals . . . in the same class" and to "tak[e] as an individual and not as a representative of an ancestor." Black's Law Dictionary at 1250.

[4] "Per stirpes" means "[p]roportionately divided between beneficiaries according to their deceased ancestor's share." Black's Law Dictionary at 1260.

Code § 64.2-202(A) states clearly that this division of the estate among equally positioned relatives applies either to the decedent's entire estate, or to "<u>each half portion of such estate when division is required by subdivision A 5 of § 64.2-200</u>." (Emphasis added.) Therefore, the provisions of Code § 64.2-202(A) independently apply to each moiety of John's estate created pursuant to Code § 64.2-200(A)(5). Code § 64.2-202(A); <u>see also</u> <u>Williams</u>, 178 Va. at 99, 16 S.E.2d at 322-23.

Jason, who is the only member of the class to which John's paternal side moiety passes under Code § 64.2-200, takes the entirety of John's paternal side moiety. Code § 64.2-202(A). Because that paternal side moiety is one-half of John's entire estate, Jason takes one-half of John's estate.[5]

This concludes our review of the applicable statutory provisions that properly determine how John's paternal side moiety should be distributed. The circuit court erred to the extent it held otherwise.

---

[5] Although we are required to determine to what class John's maternal side moiety passed under Code § 64.2-200, determining how John's maternal side moiety is distributed proportionally among members of that class under Code § 64.2-202(A) is not in dispute and, therefore, unnecessary for purposes of this appeal.

### 3.  Other Statutory Provisions

We now address those statutory provisions which Linda argues require a different result, or which the circuit court cited in support of its incorrect application of law.

Citing Code § 64.2-202(B), Linda argues that, because Jason is a half-blood collateral, he can only take half of John's paternal side moiety that he would otherwise be entitled to receive.  Citing Code § 64.2-200(B), Linda argues that the portion of John's paternal side moiety that Jason is deprived of should instead pass to the maternal heirs.  We disagree.

### a.  Code § 64.2-200(B)

Code § 64.2-200(B) applies if "there are either no surviving paternal kindred or no surviving maternal kindred, [or] there are neither maternal nor paternal kindred."  As already established, Code § 64.2-200 is a sequential listing of potential, legislatively prioritized classes to whom a decedent's estate passes.  When reviewing the Code § 64.2-200 categories in sequential order, if a subsection applies because a member of the identified class exists, a court must conclude its analysis at that point in applying Code § 64.2-200.

John's paternal side moiety passed to the class identified in Code § 64.2-200(A)(5)(b).  John's maternal side moiety passed to the class identified in Code § 64.2-200(A)(5)(b) or Code § 64.2-200(A)(5)(d).  Code § 64.2-200(B) is listed

11

subsequent to Code § 64.2-200(A)(5)(a) through (e) and, by its terms, only applies if Code § 64.2-200(A)(5)(a) through (e) are inapplicable to either or both moieties. Thus, Code § 64.2-200(B) does not apply and cannot affect distribution of John's paternal side moiety under Code § 64.2-202(A).

### b. Code § 64.2-202(B)

Code § 64.2-202(B) provides that "collaterals of the half blood shall inherit only half as much as those of the whole blood." Code § 64.2-202(B) begins with the phrase "[n]otwithstanding the provisions of subsection A." This phrase indicates that the half-blood rule of Code § 64.2-202(B) operates to modify only the application of Code § 64.2-202(A). Moreover, by its terms, Code § 64.2-202(B) does not alter the division of the moieties required by Code § 64.2-200(A)(5). Thus, once the application of Code § 64.2-202(A) to each moiety is separately established, the extent to which Code § 64.2-202(B) modifies the Code § 64.2-202(A) distribution of John's paternal side moiety must be determined.

It is clear that Code § 64.2-202(B) does not modify the Code § 64.2-202(A) distribution in this case. John's paternal side moiety passes to a class comprised of only one heir: Jason. Even though Jason is a half-blood collateral heir, no whole-blood collateral heir exists as part of that class to which John's paternal side moiety passes. See Code § 64.2-

12

200(A)(5)(b). Without such a whole-blood collateral, no whole-blood inheritance exists to provide a statutory basis for applying Code § 64.2-202(B) to reduce John's inheritance. Thus, Code § 64.2-202(B) does not affect distribution of John's paternal side moiety as provided under Code § 64.2-202(A).

Moreover, it is of no consequence that John's fourteen second cousins are whole-blood collaterals. These fourteen second cousins take pursuant to John's maternal side moiety, and have no interest in John's paternal side moiety. Code § 64.2-200(A)(5). Their existence does not affect the class to which John's paternal side moiety passes, they are not a part of that class, and they do not alter the distribution of shares among the heirs within that class. Code §§ 64.2-200(A)(5); 64.2-202(A); Williams, 178 Va. at 99, 16 S.E.2d at 322-23.

c.   Code § 64.2-203(B)

Code § 64.2-203(B) provides that "[a] person who is related to the decedent through two lines of relationship is entitled to only a single share based on the relationship that would entitle him to the larger share." The circuit court cited this provision as limiting Jason's distribution to one-half of John's paternal side moiety. This was error.

Code § 64.2-203(B) is implicated when an individual is related to a decedent in more than one way. The record reflects that Jason is related to John by only one line of

13

relationship. That is, Jason relates to John only by being John's half-uncle on John's paternal side. Thus, Code § 64.2-203(B) is not implicated and cannot affect distribution of John's paternal side moiety under Code § 64.2-202(A).

### III. Conclusion

The circuit court erred in distributing John's estate so that Jason took only a one-half share of John's paternal side moiety and therefore received only 1/4 of John's total estate. A correct application of the relevant statutory provisions requires a different result.

Code § 64.2-200(A)(5) requires separation of John's entire estate into two moieties, each valued at one-half of John's estate. One moiety passes to John's maternal kindred, and Code § 64.2-200(A)(5)(b) or Code § 64.2-200(A)(5)(d) requires that maternal side moiety to pass to John's fourteen second cousins. The other moiety passes to John's paternal kindred, and Code § 64.2-200(A)(5)(b) requires that paternal side moiety to pass to Jason. Further, Code § 64.2-202(A) requires John's paternal side moiety to be distributed entirely to Jason, and neither Code §§ 64.2-200(B), 64.2-202(B), nor 64.2-203(B) affects that distribution. We will therefore reverse the judgment of the circuit court and enter final judgment in favor of Jason.

<u>Reversed and final judgment.</u>

14